[L. A. No. 525.     Department One.—May 2, 1899.]

## COUNTY OF LOS ANGELES, Respondent, *v.* HOLLYWOOD CEMETERY ASSOCIATION, Appellant.

CEMETERY—LAWFUL AVOCATION—TENDENCY NOT INJURIOUS.—The establishment and maintenance of a cemetery for the burial of the dead, for the purpose of deriving profit therefrom, is a lawful avocation, which does not presumably have an injurious tendency.

ID.—NUISANCE—POLICE POWER.—A cemetery cannot be regarded as a nuisance *per se*, in measuring the extent of the police power to regulate it, though cemeteries are within the power of reasonable regulation by cities, towns, and counties.

ID.—REASONABLENESS OF REGULATION—POPULATION.—An ordinance passed pursuant to the constitutional grant of power to make police regulations may be reasonable as applied to the regulation of cemeteries by a city or town within its limits, which would be entirely unreasonable when put in operation in all parts of a county thinly populated in many of its parts.

ID.—RESTRICTION OF INDIVIDUAL RIGHTS.—Any restrictions of the rights of individuals to pursue a lawful avocation, by virtue of the police power, must extend to all individuals who might exercise that right within the same district.

ID.—INVALID COUNTY ORDINANCE—UNREASONABLE AND UNEQUAL REGULATION — ARBITRARY WILL OF SUPERVISORS.—A county ordinance making it unlawful to establish, extend, or enlarge any cemetery within the limits of the county, without first obtaining permission of the supervisors, but impliedly permitting burials in cemeteries already established, without restriction, is both unreasonable in making the right to pursue a lawful avocation depend upon the arbitrary will of the supervisors, and unequal in its operation, in assuming to limit the unrestricted privilege of burial to one class of citizens, and to deny it to another class within the same district, or to make the latter subject to the arbitrary will of the supervisors to grant or to refuse that privilege. Such ordinance is invalid, and cannot be enforced by the county.

APPEAL from orders of the Superior Court of Los Angeles County overruling a demurrer to the complaint and granting an injunction. M. T. Allen, Judge.

The facts are stated in the opinion.

Edwin Baxter, for Appellant.

The caprice of the supervisors is not "due process of law." The right to prohibit burials within a certain district rests upon the proposition that any burial within that district is injurious to the public health. (*Ex parte Bohen*, 115 Cal. 372.) Burial places are indispensable, and are not a nuisance *per se.* (3 Am. & Eng. Ency. of Law, 55; *Lake View v. Rose Hill Cemetery Co.*, 70 Ill. 191, 195, 196; *Lake View v. Letz*, 44 Ill. 81; *Kingsbury v. Flowers*, 65 Ala. 479; 39 Am. Rep. 14; *Monk v. Packard*, 71 Me. 309; 36 Am. Rep. 316.) An unreasonable municipal ordinance treating that as a nuisance which is not such is invalid. (*Yates v. Milwaukee*, 10 Wall. 497; *State v. Mott*, 61 Md. 297; 48 Am. Rep. 105; *Ex parte Sing Lee*, 96 Cal. 354; Cooley on Constitutional Limitations, 203; *Austin v. Murray*, 16 Pick. 125; *Matter of Jacobs*, 98 N. Y. 98; *Yick Wo v. Hopkins*, 118 U. S. 356, 373.) The ordinance operates unequally, and is invalid for that reason. (*Ex parte Bohen*, supra; *Mayor etc. v. Thorn*, 7 Paige, 201; *Lyman v. Chicago*, 78 Ill. 405.)

J. A. Donnell, Alexander Campbell, Willoughby Cole, Cole & Cole, and Silent & Campbell, for Respondent.

The ordinance is within the constitutional grant of police power to counties. Under section 11, article XI, of the constitution, cemeteries are subject to the police power. (*Brick Presb. Church v. Mayor*, 5 Cow. 538; *Cortes v. Mayor etc.*, 7 Cow. 585; *Kincaid's Appeal*, 56 Pa. St. 423; *City Council v. Wentworth Baptist Church*, 4 Strob. 306, 310.)

CHIPMAN, C.—Injunction to restrain defendant from establishing a cemetery upon certain lands and interring human bodies therein. The complaint shows that the supervisors of Los Angeles county duly passed an ordinance, the first section of which reads: "It shall be unlawful to locate or establish, extend or enlarge, any cemetery, graveyard, burying-ground or crematory within the limits of the county of Los Angeles without the permission of the board of supervisors first had and obtained." The second section directs how to apply for such permission and what facts shall be set forth in the petition therefor, and that thirty days' notice of the hearing of the petition shall be given by publication in some newspaper published in the county. The third and last section provides for publication of the ordinance. It is alleged that since said ordinance took effect defendant has located and is now locating and establishing a cemetery (upon certain lands described) situated in said county, "without the permission of the said board of supervisors first had and obtained, and contrary to and in violation of all the provisions of said ordinance"; the complaint then sets out certain acts now being done by defendant in furtherance of its said purpose, and that it "will continue in the work of locating and establishing such cemetery, in violation of said ordinance . . . . and greatly to the injury of the entire neighborhood of the said location, unless restrained," et cetera.

Defendant answered the order to show cause by general demurrer to the complaint and by certain affidavits, which latter were controverted by counter-affidavits. The demurrer was overruled, and the court granted an injunction as prayed for directing defendant to refrain from proceeding further to establish said cemetery and from burying any human bodies in the land

described.    Defendant appeals from the order overruling the demurrer and from the judgment and order granting the writ and from the writ.

The demurrer admits the allegations of the complaint and raises the questions discussed by counsel.  The trial court disposed of the case on the demurrer and on the sufficiency of the complaint.  We shall, therefore, take no notice of the affidavits.

The contention of defendant is that the ordinance is violative of the fourteenth amendment of the federal constitution and of section 11, article I, and section 11, article XI, of our state constitution; and is an unreasonable exercise of the power to regulate, and therefore invalid.  The ordinance before us simply makes it unlawful to establish a cemetery without using it for the burial of the dead; and the complaint does not charge in terms that defendant has used its land or is about to use it for the burial of the dead.  Counsel on both sides, however, and the court as well, treat the ordinance and the complaint as aimed not only at the dedication or establishment of the cemetery, but also at the burial of the dead therein.  We shall, therefore, assume that the broader meaning of the word "cemetery" is intended in the ordinance and the complaint.

From the opinion of the learned judge who sat in the case (printed in the record) it is manifest that he regarded the establishment of a cemetery for the interment of human bodies "as an avocation which may be well presumed to have an injurious tendency."  It is not so stated, but the opinion proceeds, I think, upon the assumption that a cemetery is a nuisance *per se*, or at least may be so regarded in measuring the extent of the police power to regulate it.  We cannot concur in this view, nor can we concur in the position that the business of conducting a cemetery is an avocation presumably having an injurious tendency.  We think, however, and in this we quite agree with the learned counsel for respondent, that there are many considerations, too obvious to require enumeration, which bring cemeteries within the power of reasonable regulation by both city and county municipalities.

Before proceeding further, it may be well to observe that this power of regulation given by our constitution to municipalities,

while alike conferred upon cities, towns, and counties, an ordinance passed pursuant thereto may be reasonable when confined to the limits of a city or town which would be entirely unreasonable when put in operation in all parts of a large county thinly populated in many of its parts. "Regulations proper for a large and prosperous city might be absurd or oppressive in a small and sparsely populated town or in a county." (Dillon on Municipal Corporations, sec. 327.)

Article XI, section 11, of the constitution of this state, provides as follows: "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." This section is re-enacted in the County Government Act, section 25, act of April 1, 1897 (Stats. 1897, p. 452). Of this provision it was said in *Ex parte Sing Lee*, 96 Cal. 354, as to cities and towns, that it is sufficiently broad and comprehensive to "sustain the enactment of any ordinance having a reasonable tendency to promote the health, comfort, safety, and welfare of all the inhabitants of the municipality, and which would not be in conflict with some general law."

Is the ordinance before us a reasonable exercise of the power conferred by the constitution and the statute upon boards of supervisors, and as applicable to counties? It cannot be assumed that the supervisors in the present case legislated with a view to reach the defendant's enterprise especially, or that they knew it was in contemplation when the ordinance was enacted. On the contrary, it must be presumed that their purpose was to promote the welfare of the inhabitants. The validity of the ordinance must be determined from its face alone. The ordinance makes it unlawful to establish, extend, or enlarge any cemetery within the limits of the county without the permission of the supervisors. It does not attempt to deal with or prohibit private interments, nor with interments in cemeteries already established. It declares that in no part of Los Angeles county, however remote from any city or town, even though the location be suitable for the purpose and entirely satisfactory to the neighboring inhabitants, no cemetery shall be established except by permission of the supervisors first obtained. As the ordinance is silent as to interments in cemeteries already established, it nec-

essarily permits burials in such cemeteries without restriction; and thus allows the owners of cemeteries already established the right to exercise privileges denied to defendant. It is not unlawful to establish a cemetery for the burial of the dead, deriving profit therefrom as a business enterprise. To provide for the repose of the dead is as lawful as to provide for the comfort of the living. There are reasons why the burial of the dead should be subject to reasonable regulation which may not justify similar restrictions or regulations as to the homes of the living; but we can see no more reason why the right to establish cemeteries in a county should be subject to the will of the supervisors than that the right to engage in any other lawful enterprise should be so circumscribed. There is a wide difference between regulation and prohibition—between regulatory provisions as a condition imposed for the exercise of a lawful occupation, and making the right itself to depend upon the unrestrained will of the municipality. It would hardly be contended that an ordinance declaring it to be unlawful to engage in the business of farming or merchandising in the county without the permission of the supervisors would be a reasonable exercise of legislative power, or could reasonably be said to be exercising the power to regulate. The supervisors may impose a license, the payment of which shall be a condition to the enjoyment of the privilege of engaging in lawful occupations; they may regulate the manner of conducting the business if it be of a character tending to be injurious; but if the business be lawful, and having no injurious tendency, they cannot say who shall and who shall not exercise the right itself. Under the guise of regulating a business the municipality cannot make prohibition possible by committing to the officers of the municipality the arbitrary power to deny permission to engage in that business. We do not think it was ever intended by the people in ordaining the section of the constitution referred to, or of the legislature in the statutory enactment, to include, in the power to make and enforce regulations, a power purely personal and arbitrary. "For," as was said by Matthews, J., in *Yick Wo v. Hopkins,* 118 U. S. 356, "the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be in-

tolerable in any country where freedom prevails, as being the essence of slavery."

In *Austin v. Murray*, 16 Pick. 121, the ordinance prohibited any person from bringing into the town of Charleston any dead body, or cause the same to be conveyed through the streets or to be buried on the premises of such person, without a permit from the selectmen of the town. The court said that if the by-law had been limited to the populous part of town and had been made in good faith "for the purpose of preserving the health of the inhabitants, which may be in some degree exposed to danger by the allowance of interment in the midst of dense population, it would have been a very reasonable regulation. But it cannot be pretended that this by-law was made for the preservation of the health of the inhabitants. Its restraints extend many miles into the country, to the utmost limits of the town. Such an unnecessary restraint upon the right of interring the dead we think essentially unreasonable."

In *State v. Mott*, 61 Md. 297, 48 Am. Rep. 105, the city council of Baltimore was granted power to pass ordinances to preserve the health of the city, to prevent and remove nuisances, prevent the introduction of contagious diseases within the city, and within three miles thereof regulate the places for manufacturing soap and candles, the erection of slaughter-houses and distilleries, "and wherever every other offensive trade is carried on." The city passed an ordinance making it unlawful for "any person . . . . to work, operate, or continue in use, for the purpose of burning oyster shells or limestone, any kiln situated or erected within the limits of the city of Baltimore." The ordinance was held to be void because an absolute prohibition of a lawful occupation which might, on the remote outskirts of the city, be carried on without injury to anyone.

2. Aside from the objections just considered, the ordinance is unequal in its operation.

In *Ex parte Bohen*, 115 Cal. 372, an ordinance of the city and county of San Francisco made it unlawful for any person to purchase or sell any land within the county for the purpose of interring any human body therein, but permitted interments in plots or lots belonging to persons, associations, or corporations for their families or members. The ordinance was held to be

unreasonable and invalid, as assuming to limit the privilege of burial to one class of citizens and denying it to another class within the same district. It was further held that any restriction of the rights of the individual by virtue of the police power must extend to all individuals who might exercise the right. I am unable to distinguish this case from the one in hand. It is true the ordinance in Bohen's case expressly gave to the then owners of lots the right to use them for burial purposes while denying the right to any person who might thereafter purchase a burial lot. It differs from the Los Angeles county ordinance only by expressing in words what the latter clearly implies. Both ordinances discriminate in favor of a class of persons. The fact that the supervisors reserved the power to place all persons on an equality by granting permission does not relieve the ordinance from this objection. There is still a class with unrestricted rights which the other class may not exercise without permission; and whether this permission may or may not be granted rests in the arbitrary power of the supervisors. I can add nothing to the force of the reasoning in the Bohen case; and the authorities there cited, in support of the principles laid down, need no re-enforcement.

It is advised that the injunction be dissolved and the order overruling the demurrer be reversed, with directions to sustain the demurrer.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the injunction is dissolved and the order overruling the demurrer is reversed, with directions to sustain the demurrer.

Garoutte, J., Harrison, J., Van Dyke, J.

Hearing in Bank denied.