THE PEOPLE *ex rel.* C. L. Keller, Appellee, *vs.* THE VILLAGE OF OAK PARK, Appellant.

*Opinion filed December 16, 1914—Rehearing denied Feb. 4, 1915.*

1. ORDINANCES—*what are not to be counted as buildings not used for residence purposes.* In determining the proportion of buildings used exclusively for residence purposes within a given radius of the site of a proposed public garage, barns and private garages used in connection with residences are not to be counted as buildings not used exclusively for residence purposes.

2. MUNICIPAL CORPORATIONS—*ordinance passed under express power is presumed to be valid.* An ordinance passed in the exercise of an express grant of power by the legislature is presumed to be valid, and it is incumbent upon a party attacking the ordinance as unreasonable to show affirmatively and clearly that it is so.

3. SAME—*when an ordinance regulating the location of public garages is not unreasonable.* Under the Cities and Villages act, as amended in 1911, cities are granted express power to direct the location of public garages, and an ordinance which prohibits the construction or maintenance of a public garage on any site where two-thirds of the buildings within a radius of 500 feet thereof are used exclusively for residence purposes, without the written consent of a majority of the property owners, according to frontage, within such radius, is not void for unreasonableness.

4. SAME—*when public garage ordinance is not void as discriminatory.* An ordinance which makes it unlawful to "build, construct or maintain" a public garage in a residence district without obtaining frontage consents applies to such garages as are already being maintained as well as to those proposed to be constructed in the future, and is therefore not void as discriminating between persons already engaged in the business and those intending to so engage. (*Tugman* v. *City of Chicago,* 78 Ill. 405, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

FREDERICK W. PRINGLE, (PRINGLE & FEARING, of counsel,) for appellant.

WALTER S. HOLDEN, and G. FRED RUSH, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

On the relation of C. L. Keller a petition for a writ of *mandamus* was filed against the village of Oak Park, praying that the writ issue against said village and its officers, commanding them to issue a permit to the relator to build a public automobile garage and salesroom upon the property described in the petition. The petition alleges the relator owned the property upon which he proposed to erect a public garage, and that he had applied to the authorities for a permit to erect a building in accordance with plans and specifications accompanying the application but that such permit was refused. The relator had not procured the consent of the property owners, as required by an ordinance of the village of Oak Park, which is as follows:

"Sec. 1. It shall not be lawful for any person or corporation to locate, build, construct or maintain in the village of Oak Park, on any site where two-thirds of the buildings within a radius of 500 feet of the proposed site are used exclusively for residence purposes, a building for a public automobile garage * * * without the written consent of a majority of the property owners, according to frontage, within a radius of 500 feet of the proposed site of said building."

The petition alleged the ordinance was void because unreasonable, arbitrary, unnecessary, and, in effect, prohibitive. An answer was filed by the village of Oak Park. The cause was heard by the court without a jury and a judgment rendered awarding the writ as prayed. The court cer-

tified the validity of a municipal ordinance was involved, and the village has prosecuted an appeal to this court.

It is first contended by relator (hereafter referred to as appellee) that he was not required to procure the consent of the property owners, because two-thirds of the buildings within a radius of 500 feet of the proposed site were not "used exclusively for residence purposes." The proof showed there were thirty-eight buildings used for residence purposes within the territory, eight business buildings, one public garage, one church, three private barns and twelve private garages. The barns and private garages were upon lots occupied as residences and used in connection with the residences. Appellee claims that only the buildings occupied as residences are entitled to be counted as property used for residence purposes, and that the private garages and barns used in connection with the residences are to be counted as buildings in determining the proportion of buildings used for residence purposes, and so counting them, less than two-thirds of the buildings within a radius of 500 feet are used for residence purposes. We do not think this a reasonable construction of the ordinance.

The most important question is whether the ordinance passed by appellant was a reasonable and valid exercise of its power. Clause 82 of paragraph 62, chapter 24, as amended in 1911, (Hurd's Stat. 1913, p. 270,) conferred power upon cities and villages to direct the location and regulate the use and construction of garages within the limits of the city or village. Prior to that time municipalities had the same power with reference to breweries, distilleries, livery, boarding and sales stables and some other kinds of business. Under the power thus conferred appellant had the right to direct the location of garages, and in the exercise of that power it passed the ordinance attacked.

In *City of Chicago* v. *Stratton*, 162 Ill. 494, the ordinance considered by the court made it unlawful for any person "to locate, build, construct or keep in any block in

which two-thirds of the buildings are devoted to exclusive residence purposes, a livery, boarding or sales stable * * * unless the owners of a majority of the lots in such block, fronting or abutting on the street, consent, in writing, to the location." The ordinance required the consent of the property owners to be filed with the commissioner of buildings before a permit would be granted for the construction or keeping of such livery stable. A penalty was provided for the violation of the ordinance and a suit was brought to recover the penalty. The validity of the ordinance was attacked upon the ground that the city council was given power, by act of the legislature, to direct the location and regulate the use and construction of livery stables, and that the council had by ordinance delegated that power to the owners of a majority of the lots in the blocks specified. The court held the ordinance was not invalid on that ground; that a statute empowering a city to direct the location of livery stables includes the power to prohibit or forbid their location within residence districts and to impose such conditions and restrictions in making such prohibition as the city council may see fit to impose. The ordinance was sustained as a valid exercise of power by the city.

The ordinance considered by the court in *People* v. *Ericsson,* 263 Ill. 368, made it unlawful for any person, firm or corporation "to locate, build, construct or maintain" any public garage "in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, or within 100 feet of any such street in any such block, without securing the written consent of a majority of the property owners, according to frontage, on both sides of the street, as provided by the ordinances of the city of Chicago." The ordinance was attacked on two grounds: (1) That it deprived citizens of their constitutional rights, which the city council had no power to do; and (2) that if the city had power to legislate upon the subject the ordinance was void for unreasonableness. As

to the first objection, the court held that while a garage is not a nuisance *per se,* it is of such character that it becomes a nuisance when conducted in particular localities and under certain conditions, and that it was lawful for the legislature to confer authority upon cities to direct its location.  As to the second objection, the court held the statute conferred power upon the city, not to prohibit the location of a garage at any place within the corporate limits, but it did confer power, if the council saw fit to do so, to prohibit the location of a garage in a strictly residential district, and that the ordinance permitting the location and maintenance of a garage in a residential district under the conditions prescribed in the ordinance before the court could not be said to be unreasonable.

The argument in support of the contention that the ordinance here involved is void for unreasonableness is, because, although the garage may be built upon a purely business street, the written consent of property owners is required; because it requires the written consent of an unreasonably large number of property owners; because, by reason of the size of the territory specified, the distinction between a residence street and a business street is wiped out; because property is included that cannot be affected, and because the requirements must be complied with on any site in the whole village except in the business district at Oak Park avenue and Lake street, which already has one public garage, and the business center at Lake and Marion streets, which has four public garages.  The site of the proposed location of this garage is on lots on the north side of and facing Madison street.  There are no residences or other buildings of any kind in that block facing Madison street on that side.  Facing Madison street in the block immediately south of and opposite the block where it is desired to locate the garage are five business buildings and no residences.  Just north of the proposed garage site, in the same block and within much less than 500 feet, are nine

266 – 24

residences, and immediately south of the business buildings, facing north on Madison street and within the 500-feet limit, are nine residences. Other residences east and west of the blocks where the residences referred to are located are within the 500-feet limit. Within the radius of 500 feet from appellee's lots are eight business buildings, (excluding private barns and private garages belonging to private residences,) thirty-six residences and two flat-buildings. It will be seen the number of residences greatly predominates over business buildings. In *City of Chicago* v. *Stratton, supra,* it was held the council might properly, in determining the location of a livery stable, consult the wishes and ascertain the needs of the residents of the block where the stable is to be kept, and to that end make their written consent the basis for issuing a permit. The court said: "In matters of purely local concern the parties immediately interested may fairly be supposed to be more competent to judge of their needs than any central authority."

If the ordinance before us is void for unreasonableness it is only because of the size of the area in which the property owner's consent is required to be obtained. Admitting that the territory is large, is it so unreasonably large as to render the ordinance void? In principle it is the same as the ordinances sustained in the cases above cited. In our opinion it does not appear, from an inspection of the ordinance itself nor from the testimony in the record, that the ordinance is such an unreasonable exercise of the power of the city council as to be invalid. Whether an ordinance is unreasonable and void is a question of law for the court. In *Hawes* v. *City of Chicago* 158 Ill. 653, the court, after reviewing the authorities, said: "The rule is, that it requires a clear and strong case to justify a court in annulling the action of a municipal corporation acting within the apparent scope of its authority." Where an ordinance is passed in the exercise of a power conferred upon a municipality the presumption is in favor of its validity, and it is

incumbent upon the party attacking it as an unreasonable or oppressive exercise of the power to show affirmatively and clearly its unreasonableness. (*Harmon* v. *City of Chicago,* 140 Ill. 374; *Chicago and Alton Railroad Co.* v. *City of Carlinville,*.200 id. 314.) We are unable to say these requirements have been met in this case.

Neither do we think the ordinance void because it discriminates in favor of those persons engaged in a like business at the time the ordinance became effective, December 19, 1912. The ordinance clearly states "it shall not be lawful for any person or corporation to locate, build, construct or maintain." This, in our opinion, as clearly applies to public garages then in operation as to those to be subsequently opened. Any failure of the city authorities of Oak Park to enforce the terms of the ordinance does not render the ordinance void.

Appellee cites *Tugman* v. *City of Chicago,* 78 Ill. 405, as supporting his contention that the ordinance is discriminatory. In that case the ordinance prohibited any person from engaging in certain kinds of business mentioned, in a certain territory, after the passage of the ordinance, but did not apply to persons engaged in the prohibited lines of business at the time the ordinance was adopted. Other cases cited by appellee on this point we think have no application, for the ordinance, we have seen, was not discriminatory in any sense. In this respect it is precisely the same as the ordinances in *City of Chicago* v. *Stratton, supra,* and *People* v. *Ericsson, supra.*

We are of opinion the court erred in holding the ordinance void and in awarding the writ.

The judgment is reversed.  *Judgment reversed.*