## In re RUSSELL.

(Supreme Court, Special Term, Niagara County. April 6, 1916.)

1. MUNICIPAL CORPORATIONS &#9758;589—POLICE POWER.

The police power delegated by the Legislature to municipal corporations cannot be arbitrarily exercised, and, where it affects the free enjoyment of property, should be closely scrutinized.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1308, 1319; Dec. Dig. &#9758;589.]

2. EMINENT DOMAIN &#9758;2(1)—TAKING WITHOUT JUST COMPENSATION—PRESCRIBING FACTORY DISTRICT.

An ordinance of the city of Niagara Falls, forbidding the erection or operation of any factory within a prescribed district within the city limits, unless the owners of two-thirds of the residences and apartment houses located within 200 feet of the place where the factory was to be built and operated consent thereto in writing, including an area used for more than 100 years exclusively for residence purposes, and some residences of historical interest, possessing an exceptional scenic beauty by reason of overlooking the rapids of the upper Niagara river and Niagara Falls, and being contiguous to a park and a state reservation, where the state had expended millions of dollars in acquiring and maintaining parks and grounds as appropriate surroundings for Niagara Falls, was a proper exercise of the police power, not in violation of Const. N. Y. art. 1, § 4, forbidding the taking of private property for public purposes without just compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–8; Dec. Dig. &#9758;2(1).]

3. CONSTITUTIONAL LAW &#9758;225(1)—EQUAL PROTECTION OF THE LAWS—PRESCRIBING FACTORY DISTRICT.

Such ordinance was not a denial of the equal protection of the laws, secured by Const. U. S. art. 14, § 1.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 681; Dec. Dig. &#9758;225(1).]

Application by Richard Russell for an alternative or peremptory mandamus directing Ossian E. Carr, City Manager of the City of Niagara Falls, N. Y., and Pascall O. Dietrich, Deputy City Engineer of said city, to grant permission to erect a building on Cherry street in the said city. Denied.

Carl E. Tucker, of Niagara Falls, for relator.

Robert J. Moore, Corp. Counsel, of Niagara Falls, for respondents.

Frederick Chormann and Augustus Thibaudeau, both of Niagara Falls, for Neighborhood Association.

BISSELL, J. The city of Niagara Falls has by ordinance forbidden the erection or operation of any factory within a prescribed

area within the city limits "unless the owners of two-thirds of the residences and apartment houses located within two hundred feet of the place where such factory building is to be built and operated consent in writing thereto."

The relator, Richard Russell, since the adoption of this ordinance, has purchased a parcel of land within this prescribed area, and has applied to the appropriate officers of the city government for permission to erect thereon a one-story factory building without obtaining the consent of two-thirds of the property owners as required by the ordinance. Such permission was denied, and the relator brings this proceeding to compel the issuance of a permit, attacking the ordinance on constitutional grounds as a taking of "private property for public use without just compensation" (Constitution of the State of New York, art. 1, § 6), and as denying "the equal protection of the laws" (Constitution of the United States, art. 14, § 1).

The area within which the relator desires to erect his factory building, and which is prescribed by the ordinance, has been used for upwards of 100 years exclusively for residence purposes, some of the residences being of historic interest. The scenic beauty of this particular section of the city is probably unsurpassed by any other locality in the world. It overlooks the rapids of the upper Niagara river and Niagara Falls and Goat Island, and is contiguous to Prospect Park and the State Reservation at Niagara. The state of New York has expended millions of dollars in acquiring and maintaining parks and grounds as appropriate surroundings for the famous cataract of Niagara, which is visited annually by many thousands of tourists from all parts of the world. I think there is little room for doubt that the location and operation of a factory in these surroundings would greatly impair the value of property in this section and seriously interfere with its proper enjoyment in the purposes to which it has been heretofore devoted.

[1-3] The only question to be determined here is whether or not the ordinance in question is a proper exercise of the police power, which by legislative delegation has been exercised by local government and municipal corporations from time out of mind. I am aware that this power cannot be arbitrarily exercised, and that, where it affects the free enjoyment of property, it should be closely scrutinized; but I do not feel, in view of the circumstances under consideration, that this is a proper case for judicial interference.

The relator contends that his business is not a nuisance per se, the business to be carried on in such proposed factory building being the manufacture of trigger-lock reversible controller fingers used in drum controllers for electric motors, and that the police power for that reason cannot be exercised in prohibition of his business and of the erection of his proposed factory building. On this ground he seeks to avoid the holding of the recent cases of Reinman v. Little Rock, 237 U. S. 171, 35 Sup. Ct. 511, 59 L. Ed. 900, and Hadacheck v. Sebastian, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. ——. The same objection was urged in each of these cases, and is, I think, effectively answered. In the last-mentioned case (239 U. S. 394, 36

Sup. Ct. at page 145, 60 L. Ed. ——), Mr. Justice McKenna, writing the opinion, says:

"The police power and to what extent it may be exerted we have recently illustrated in Reinman v. Little Rock, 237 U. S. 171 [35 Sup. Ct. 511, 59 L. Ed. 900]. The circumstances of the case were very much like those of the case at bar, and give reply to the contentions of petitioner, especially that which asserts that a necessary and lawful occupation that is not a nuisance per se cannot be made so by legislative declaration. There was a like investment in property, encouraged by the then conditions; a like reduction of value and deprivation of property was asserted against the validity of the ordinance there considered; a like assertion of an arbitrary exercise of the power of prohibition. Against all of these contentions, and causing the rejection of them all, was adduced the police power. There was a prohibition of a business, lawful in itself, there as here. It was a livery stable there; a brickyard here. They differ in particulars, but they are alike in that which cause and justify prohibition in defined localities—that is, the effect upon the health and comfort of the community. The ordinance passed upon prohibited the conduct of the business within a certain defined area in Little Rock, Ark. This court said of it: Granting that the business was not a nuisance per se, it was clearly within the police power of the state to regulate it, 'and to that end to declare that in particular circumstances and in particular localities a livery stable shall be deemed a nuisance in fact and in law.' And the only limitation upon the power was stated to be that the power could not be exerted arbitrarily or with unjust discrimination. There was a citation of cases. We think the present case is within the ruling thus declared."

In Reinman v. Little Rock, supra, the court further says (Mr. Justice Pitney writing the opinion):

"While such regulations are subject to judicial scrutiny upon fundamental grounds, yet a considerable latitude of discretion must be accorded to the law-making power; and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth Amendment."

Mr. Justice Vann, writing for the Court of Appeals in Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480, 10 L. R. A. 178, 19 Am. St. Rep. 490, in collating the authorities upon the police power and the question as to what is a proper exercise of it, among other things, says:

"'A large part of the police power of the state is exercised by the local governments of municipal corporations, and the extent of their police powers depends upon the limitations of their charters.' * * * 'The limit to the exercise of the police power can only be this: The legislation must have reference to the comfort, the safety, or the welfare of society, and it must not be in conflict with the provisions of the Constitution.' Potter, Dwarris on Stat. 458."

From these considerations it follows that the relator's application must be denied, with $25 costs to the respondents.