## SALT LAKE CITY v. WESTERN FOUNDRY & STOVE REPAIR WORKS.

No. 3398.   Decided Jan. 13, 1920.   On Application for Rehearing, February 17, 1920.   (187 Pac. 829.)

1. MUNICIPAL CORPORATIONS—CITY HAD AUTHORITY TO CREATE RESIDENCE DISTRICT. Under Comp. Laws 1917, sections 570x69, 570x70, 570x87, a city had the right to exclude foundries from a particular section of the city, in good faith created a residence district, although there were other sections in the city, where the conditions were similar in character, which were unaffected by the ordinance establishing the district.[1]  (Page 452.)

2. MUNICIPAL CORPORATIONS—CREATING RESIDENCE DISTRICT AND PROHIBITING OPERATION OF FOUNDRY NO VIOLATION OF ORGANIC LAW. An ordinance of a city, creating a residence district under Comp. Laws 1917, sections 570x69, 570x70, 570x87, and prohibiting the operation of foundries, etc., therein, does not violate any rights guaranteed by the organic law of the state.  (Page 453.)

3. EMINENT DOMAIN—EXCLUSION OF INDUSTRIAL PLANTS FROM RESIDENCE DISTRICT NOT TAKING OF PROPERTY WITHOUT COMPENSATION. Where the creation of a residence district would ex-

---

[1] *Salt Lake City* v. *Utah L. & Ry. Co.*, 45 Utah, 50-62, 142 Pac. 1067.

tend to the needs of the general public the power to regulate or prohibit by ordinance the invasion of such a district by industrial plants ought not to be questioned on the ground that the exclusion of an industrial plant would be the taking of property for public use without just compensation. (Page 454.)

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans,* Judge.

The Western Foundry & Stove Repair Works was convicted of having violated a city ordinance of Salt Lake City, creating a residence district, and it appeals.

AFFIRMED.

*M. L. Ritchie* and *Walton & Walton,* all of Salt Lake City, for appellant.

*W. H. Folland,* City Atty., and *H. H. Smith* and *Shirley P. Jones,* Asst. City Attys., all of Salt Lake City, for respondent.

CORFMAN, C. J.

The defendant was convicted, in the district court of Salt Lake county, upon an appeal from the city court of Salt Lake City, of having violated a city ordinance creating a residence district, and making it unlawful, among other things, to erect or maintain a foundry within the district created. The board of commissioners of Salt Lake City passed the ordinance, under which defendant was tried and convicted, July 23, 1917, amending an ordinance passed by the board June 12, 1917. The ordinance, as originally passed, and before amendment, made it unlawful to erect or maintain within the boundaries of the district described any foundry, etc., and set aside the restricted area as a residence district, but excluded under its provisions industrial plants in actual operation at the date of its passage. As amended, all specified industrial plants, whether in operation or not, were included, but the boundaries of the district were so changed as to exclude from the re-

stricted area a certain brass foundry, theretofore included under the provisions of the ordinance passed June 12, 1917. The testimony shows that the defendant's plant was the only foundry within the restricted area as defined by the amended ordinance under which it was prosecuted. For some years prior to 1917 the defendant had operated a foundry at the rear of No. 531 South State Street, Salt Lake City, a short distance south of the city and county building. In midwinter, 1916-1917, the defendant selected and purchased a building site at the northeast corner of the intersection of Eighth West and Ninth South streets, now within the boundaries of the residence district afterwards created by the ordinance. About April 1, 1917, the defendant applied for and was granted a permit by the building inspector of Salt Lake City to erect a brick building on said building site "to be used for business." Thereafter, in early April, 1917, the defendant commenced the work of erecting a foundry building on said site, and thereupon many residents and property owners in the immediate neighborhood began to protest to the board of city commissioners against the erection of the foundry. About the same time the defendant petitioned the board of city commissioners for permission to construct and maintain a spur railway track to run to its plant then in course of construction, and stating for the first time that "petitioner is now building and constructing an iron foundry on the land owned by it." Numerous conferences thereafter followed between the city commission and the petitioner's officials, which finally culminated in an offer being made by Salt Lake City to purchase the defendant's building site, which offer, however, was subsequently withdrawn and the ordinance passed creating the aforesaid residence district. The defendant proceeded, however, with the completion of its foundry plant, and then to operate the same, by reason of which it was complained of, prosecuted, and found guilty before a jury of having violated the ordinance.

The testimony is quite conclusive that the character of the restricted area is essentially a residence district, not always thickly populated and built up with homes, but containing

many private dwellings, interspersed with vacant lots, churches, schools, and having a public library in the immediate vicinity of defendant's plant. The record also shows that the passage of the ordinance in question was the initial attempt on the part of the board of commissioners to zone the city by creating a residence district. Outside of the restricted area thus defined are many residential sections built up with homes, among which are interspersed various industrial plants in operation of the kind and character of those specified as being prohibited in the limited section or residence district by the provisions of the ordinance now under consideration.

The defendant, on appeal, questions the constitutionality of the ordinance and its validity on the grounds that it is unreasonable and discriminatory.

By legislative enactment, Comp. Laws Utah 1917, section 570x69, the board of city commissioners was given the power "to direct the location and regulate the management and construction of * * * foundries * * * in and within one mile of the limits of the corporation." Under the provisions of section 570x70, the power is given "to prohibit any offensive, unwholesome business or establishment in and within one mile of the limits of the corporation," and the further power "to regulate the location thereof." Under a general welfare clause, section 570x87, the board of commissioners is empowered "to pass all ordinances and rules, and make all regulations, not repugnant to law, necessary for carrying into effect or discharging all powers and duties conferred by this chapter, and such as are necessary and proper to provide for the safety, and preserve the health, and promote the prosperity, improve the morals, peace, and good order, comfort, and convenience of the city and the inhabitants thereof, and for the protection of property therein."

If we correctly understand the contention made by defendant's counsel, it is that, while under the foregoing general welfare clause the city would have the right to exclude from its corporate limits foundries and other objectionable business entirely, yet it would not have the right nor be justified in excluding them from a particular section of the city and

allow them to be maintained and operated in other sections
where the conditions are similar in character. In support of
their contention counsel have cited and quoted extensively in
their brief from the following authorities: *Salt Lake City* v.
*Utah L. & Ry. Co.,* 45 Utah, 50-62, 142 Pac. 1067; *Ex parte
Bohen,* 115 Cal. 372, 47 Pac. 55, 30 L. R. A. 618; *Los Angeles*
v. *Hollywood Cemetery,* 124 Cal. 344, 57 Pac. 153, 71 Am. St.
Rep. 75; *Ex parte Dondero,* 19 Cal. App. 66, 124 Pac. 884;
*Weadock* v. *Judge,* 156 Mich. 376, 120 N. W. 991, 132 Am. St.
Rep. 527, 16 Ann. Cas. 720; *State* v. *Sheriff,* 48 Minn. 236, 51
N. W. 112, 31 Am. St. Rep. 650. As we read the foregoing
authorities, they shed no light on the precise question involved
in the present case. The opinions quoted by counsel refer to
and discuss ordinances held to be unreasonable and invalid
because their provisions did not apply to all citizens alike
within the district created. They assumed to restrict the
rights of one class, while at the same time permitting another
class similarly situated to exercise and enjoy the rights and
privileges denied in the first instance. By way of illustration,
in the case of *Ex parte Bohen,* supra, the ordinance under
consideration by the California court prohibited burials of
the dead within a certain district of the city of San Francisco,
but at the same time excepted from its restrictive provisions
those who had acquired burial lots at the time of the passage
of the ordinance. The California court therefore held the
ordinance invalid because it was discriminatory in its opera-
tion between individuals similarly situated. All the cases
cited and discussed by defendant are of like character and
would be clearly in point had the defendant been prosecuted
and convicted under the ordinance as originally passed by the
board of commissioners June 13, 1917. The ordinance then
excepted "such individual plants as are on the date of the
passage of this ordinance in actual operation" from the opera-
tion of its provisions. As amended and passed July 26, 1917,
the foregoing discriminatory feature is eliminated. No ex-
ceptions are made, and its provisions apply to and operate
uniformly upon all citizens alike within the residential dis-
trict created.

But it is contended by defendant that the amended ordinance under which it was prosecuted is none the less discriminatory because the board of commissioners acted arbitrarily in creating a limited district, thus discrminating between localities similarly situated and persons desiring to do business in them. While it is true, the record shows that considerable portions of the city outside of the district created are used mainly for residential purposes, yet it does not necessarily follow that in effect the ordinance we have under consideration designates these residential sections outside the district it expressly creates as industrial or otherwise. In passing the ordinance the board of commissioners did no more than undertake, after full investigation of conditions in the particular residential district created, to provide for the peace, good order, comfort, and convenience of the inhabitants of the city and to protect the citizens' property therein. One step in the right direction on the part of the city government ought not to be held as conclusive that in the course of time it will not take another. So long as the Legislature in its wisdom sees fit to confer upon city commissions the specific police power of regulating tanneries, bone factories, slaughterhouses, soap factories, foundries, etc., by excluding them from a particular section designed for or largely built up with homes, schools, and churches where their erection, operation, and maintenance will at once become intolerable, courts will not be prepared to say they have acted unreasonably nor for merely esthetic purposes. *City of Chicago* v. *Stratton,* 162 Ill. 494, 44 N. E. 853, 35 L. R. A. 84, 53 Am. St. Rep. 325; *People* v. *Ericsson,* 263 Ill. 368, 105 N. E. 315, L. R. A. 1915D, 607, Ann. Cas. 1915C, 183; *People* v. *Village of Oak Park,* 266 Ill. 365, 107 N. E. 636; *Ex parte Quong Wo,* 161 Cal. 220, 118 Pac. 714; *Walcher* v. *First Presbyterian Church* (Okl.) 184 Pac. 106; *Reinman* v. *Little Rock,* 237 U. S. 171, 35 Sup. Ct. 511, 59 L. Ed. 900; *Hadacheck* v. *Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927.

We think it is apparent from the testimony in the record before us that the board of commissioners acted in absolutely good faith in passing the ordinance we have        1

under consideration. Numerous property owners and residents within the district created had timely petitioned that the erection and operation of the defendant's foundry be not permitted.. The board of commissioners did not assume to act before making full investigation. Out of consideration for the defendant they at first went so far as to make an offer to purchase the defendant's site and the improvements placed thereon at practically the cost price to it. The offer was not accepted. The board of commissioners then proceeded to pass the ordinance, and the defendant proceeded to complete and operate its foundry. Under all the circumstances as detailed by the record we would not feel justified otherwise than by imputing good faith on the part of the city and holding that the board of city commissioners did not act arbitrarily nor with any intention of discriminating against the defendant.

Nor do we think the enforcement of the ordinance as against the business of the defendant was violative of any of its rights guaranteed by the organic law of the state. Practically the same questions as here presented were involved in the case of *Hadacheck* v. *Sebastian,* supra. In that case the city of Los Angeles passed an ordinance making it unlawful for any one to establish, conduct, operate, or manage a brickyard within a described portion of the city. The defendant was tried and convicted under the ordinance. Habeas corpus was prosecuted before the Supreme Court of California for the discharge of the defendant. The California court upheld the constitutionality of the ordinance. The case was then taken to the Supreme Court of the United States, and there its constitutionality again attacked, but upheld as before in the state court. The opinion of the United States Supreme Court, written by Mr. Justice McKENNA, in speaking approvingly of the decision made by the California Supreme Court, says:

"The court, on the evidence, rejected the contention that the ordinance was not in good faith enacted as a police measure, and that it was intended to discriminate against petitioner, or that it was actuated by any motive of injuring him as an individual. The charge of discrimination between localities was not sustained. The court expressed the view that the determination of prohibition was

for the Legislature, and that the court, without regard to the fact shown in the return that there was another district in which brick making was prohibited, could not sustain the claim that the ordinance was not enacted in good faith, but was designed to discriminate against petitioner and the other brickyard within the district. 'The facts before us,' the court finally said, 'would certainly not justify the conclusion that the ordinance here in question was designed, in either its adoption or its enforcement, to be anything but what it purported to be, viz. a legitimate regulation, operating alike upon all who come within its terms.' We think the conclusion of the court is justified by the evidence and makes it unnecessary to review the many cases cited by petitioner in which it is decided that the police power of a state cannot be arbitrarily exercised. The principle is familiar, but in any given case it must plainly appear to apply. It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. *Chicago & Alton R. R.* v. *Tranbarger*, 238 U. S. 67, 78 (35 Sup. Ct. 678, 59 L. Ed. 1204)."

Again, the opinion says:

"It may be that brickyards in other localities within the city where the same conditions exist are not regulated or prohibited, but it does not follow that they will not be. That petitioner's business was first in time to be prohibited does not make its prohibition unlawful. And it may be, as said by the Supreme Court of the state, that the conditions justify a distinction. However, the inquiries thus suggested are outside of our province."

The United States Supreme Court also held that the Los Angeles ordinance was not violative of section 1 of the Fourteenth Amendment to the federal Constitution.

There can be no doubt but that the enforcement of the ordinance will work a hardship upon the defendant, and as to it it will occasion some financial loss. However, it must be kept in mind that the district in which the foundry is situated is residential in its character. That being true, the establishment of industrial plants within it would very likely deprive the many owners of the use and enjoyment of their property for the purposes for which it was acquired, or, at least, might greatly depreciate property values by rendering it undesirable as places for residence. Under the

circumstances it would seem the police power would extend to the needs of the general public, and the power to regulate or prohibit by ordinance an invasion of the district by industrial enterprises ought not to be questioned on the ground that the exclusion of an industrial plant would be the taking of property for public use without just compensation. *In re Matter of Application of Russell*, 158 N. Y. Supp. 162; *Town of Colton* v. *So. Dakota Central Land Co.*, 25 S. D. 309, 126 N. W. 507, 28 L. R. A. (N. S.) 122; *In re Montgomery*, 163 Cal. 457, 125 Pac. 1070, Ann. Cas. 1914A, 130; *Re Anderson*, 69 Neb. 686, 96 N. W. 149, 5 Ann. Cas. 421; *Ex parte Lacy*, 108 Cal. 326, 41 Pac. 411, 38 L. R. A. 640, 49 Am. St. Rep. 93.

As we view the ordinance under consideration, it operates uniformly upon all classes of persons similarly situated within the residential district created by it. The district defined was not arbitrarily created, nor was the ordinance passed with any intent or design to injure the defendant or to discriminate against it or any other person within the district who might be affected by its provisions. Under the circumstances hereinbefore pointed out, we, as a court, could not substitute our judgment, even if we were so inclined, for that of the board of city commissioners, and thus exercise legislative functions clearly theirs, not ours, by saying the district in question ought not to have been created. .

For the reasons assigned, it is ordered that the judgment entered on conviction of the defendant in the district court be affirmed. Respondent to recover costs of printing briefs.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.

ON APPLICATION FOR REHEARING.

CORFMAN, C. J.

Defendant has made application for a rehearing. Counsel apparently feel much aggrieved. They assume that the individual members of the court have not given the case the

thought and consideration its importance demands. They openly assert that they "did assume that the court, *or at least the writer of the opinion, would read the record in detail, and not take things against us merely because they might be asserted in our opponent's brief."* (Italics ours.) This court may commit error; its written opinions may at times have the appearance of adhering too closely to the arguments and reasoning of counsel for one litigant as opposed to another, but, be that as it may, the court as a whole and the individual members thereof, including the writer of the opinion so severely criticized, at all times make a conscientious endeavor to be fair to the parties litigant and decide questions in accordance with the record submitted, and apply the law the court believes to be applicable thereto.

We have endeavored to discharge our duties in these particulars in the present instance. We may have been **inapt in** our statement of the facts; our conclusions of law may seem ill-founded, and the language employed in assigning our reasons for arriving at them may not appear to counsel altogether logical, but nevertheless, we insist we endeavored to properly discharge our duty, and it seems to us that we acted advisedly. We are, however, charged with taking things against defendant because they are asserted in the brief of opposing counsel. Counsel for defendant also complain of our finding that the city was not advised of the real character of the building until after the work was commenced. We still think that finding was a correct one. In order that we may relieve the court from any appearance of relying on respondent's brief, we call particular attention to complaining counsel's abstract of the record, the testimony of their own witness, H. Finkelstein, manager of respondent company, which, without qualification, reads:

"I think they started to excavate for the foundry around April 1st. I dictated the letter dated April 2, 1917, petition No. 177, for the spur; that is my signature as president. I do not know when the building permit was obtained; the contractors were to apply for it. *We never petitioned the board of commissioners for permission to erect the foundry at this place, nor advised them that we were going to do so. I suppose the first intimation that they had*

Appeal from Third District.

*of it was when we submitted our petition for a spur.. After that we had some negotiations with the city, and quite a bit later they denied the petition."* (Italics ours.)

To show that complaining counsel are absolutely correct in their abstract of the record, and also that they may be convinced that we have read the transcript and are not affirming the findings made in the opinion nor "taking things against them merely because asserted in the brief of opposing counsel," we quote from the transcript (pages 52, 53) testimony of the same witness:

"Q. You never petitioned the board of commissioners for permission to erect the foundry? A. No, sir. Q. At this place? A. No, sir. Q. You merely— A. Turned the contract over to the contractors. Q. The contractors— A. They were supposed to— Q. Entered into an agreement with the contractors? A. Yes, sir. Q. To erect you a building at this place? A. Yes sir. Q. For a foundry? A. Yes, sir. Q. And up to that time you had not consulted with any of the city officials? A. No, sir. Q. The building inspector or any one? A. No, sir."

Again, it is asserted that our opinion seems to hold that the matter of good faith of the commissioners is made the test as to whether the ordinance is arbitrary or discriminatory. We did take occasion to say that from the testimony in the record the commissioners acted in absolute good faith. Whether or not the statement was pertinent to the issues involved, and particularly in view of the contention made by defendant's counsel that the ordinance was "unreasonable and discriminatory," the opinion as written speaks for itself. Aside from those matters, however, this court, when so disposed, will, nevertheless, feel privileged to comment on the conduct of public officers, when assailed rightfully or wrongfully by counsel appearing before it, in such a manner as we feel the record before us justifies. On page 3 of counsel's brief they use this language with respect to changes made in the ordinance:

"The ordinance was so raw on its face that the commission deemed it necessary, in order to get the defendant, to amend the same. * * * These changes, while evidently suggesting unworthy motives, which may not be material, did not make the ordinance less unreasonable and discriminatory as a matter of fact, and changed no physical situation or status."

We assure counsel that the record on this appeal, together with their petition and brief and argument on petition for rehearing, have been most thoroughly and conscientiously considered by all members of the court.

We thing the opinion as written should stand, without apology, as the deliberate judgment of the court, and therefore the petition for a rehearing is denied.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.