## J. T. Elliott, et al., v. W. S. Ferguson, et al.

Decided October 29, 1904.

**1.—Pleading—Exhibit—Map.**

If a map attached to plaintiff's petition and referred to as part thereof is such an exhibit as is authorized by rule 19 for the government of the district courts, it will nevertheless not relieve the pleader from the necessity of alleging the facts to which the exhibit relates.

**2.—Same—Certainty—Proximity of Lands to Cemetery.**

Pleadings held not to show with sufficient certainty the situation of plaintiffs' lands and residences with reference to a cemetery the establishment of which is sought to be enjoined, nor that the lands are in such close proximity thereto as makes it reasonably certain that injury will result by reason of the alleged threatened nuisance.

**3.—Same—Cemetery as Nuisance—Allegation of Prospective Injury.**

It is not necessary in such character of case that plaintiffs' petition should allege facts showing that a nuisance will inevitably result from the establishment of the cemetery, it being sufficient that the facts alleged show with cogency, clearness and reasonable certainty that the acts threatened, if done, will bring into existence a nuisance, and that complainants will suffer irreparable injury thereby.

**4.—Same—Allegation Too General—Conclusion of Pleader.**

Allegations that, as a result of the burial of dead bodies in the proposed cemetery, "noisome odors and vapors would arise and pollute and fill with stench and poison the air surrounding plaintiffs' homes," and that "offensive odors and vapors dangerous to their health and injurious to the value of their property will arise and pollute the air about their homes," are too general and the mere conclusion of the pleader, in the absence of allegations that a method different from that commonly employed in the interment of the dead in this country will be adopted, or that the conditions of the cemetery and its effects will be other than those common to every graveyard in the land.

**5.—Cemeteries—Damages—Depreciation of Adjoining Property.**

The mere proximity of a proposed cemetery to the property of adjoining landowners and the consequent depreciation in the value of such property will afford the owners thereof no right of action to restrain the establishment of the cemetery.

**6.—Same—Destroying "Comfortable Use" of Adjoining Property.**

It was error for the court to charge that in order for the use of land for cemetery purposes to become a nuisance conditions must exist or circumstances arise which will render such grounds for the burial of the dead dangerous to life or health, "or in some way destroy the reasonable and comfortable use of the premises of those who reside in the vicinity," as the jury could be misled thereby into taking into consideration the mental discomfort resulting from the sight of the tombstones and funeral processions.

**7.—Same—Injury to Wells and Springs—Opinion.**

Testimony by plaintiffs that the location of the cemetery there would make their homes valueless and force them to abandon them for the reason that they could not and would not drink water off of dead people, was opinion and should have been excluded, the question before the jury being whether or not the alleged bed of water underlying the proposed site of the cemetery would become polluted and reach plaintiffs' wells and springs and injuriously affect the same, and plaintiffs not having qualified as experts on that subject.

**8.—Evidence—Books on Science.**

Books of science are not admissible in evidence to establish the doctrines

therein affirmed, nor is it permissible for counsel to recite to an expert witness statements made in such books and ask the witness if they were not a correct report of the facts stated.

**9.—Same—Curing Erroneous Admission by Charge.**

The admission of irrelevant and incompetent evidence of a highly prejudicial character, relying upon a withdrawal of it by the court to repair the damage, is a dangerous practice and not to be commended.

**10.—Cemeteries—Prospective Injury—Degree of Certainty in Proof.**

A charge that the burden of proof is on plaintiffs to show beyond a reasonable doubt that the use of the grounds for cemetery purposes will probably result in poisoning the water in their wells and springs, or in contaminating the atmosphere of their homes," etc., was erroneous as imposing on plaintiffs a greater degree of certainty than the law requires in civil cases.

Appeal from the District Court of Dallas. Tried below before Hon. T. F. Nash.

*W. A. Kemp* and *W. A. Evans,* for appellants.—1. Where a petition does not contain such specific averment of facts as shows a cause of action, it is not cured by referring to a map attached as an exhibit and made a part of said petition. Miles v. Mays, 4 Wilson's App. Civ. Cas., 170; Williams v. Harrison, 65 S. W. Rep., 884; Pool v. Sanford, 52 Texas, 630.

2. It does not follow that, because the use of one's land for cemetery purposes might "in some way" destroy the reasonable and comfortable use of the premises of those who reside in the vicinity, such use is necessarily a nuisance. Dunn v. City of Austin, 77 Texas, 146; Moak v. Packard, 71 Me., cited in 5 Am. & Eng. Enc. of Law, 791, note 1.

3. In order to obtain an injunction against an act which is lawful and not a nuisance per se, it is necessary for plaintiffs to prove beyond a reasonable doubt the existence of such facts as show with reasonable certainty that a nuisance will be brought into existence. Dunn v. City of Austin, 77 Texas, 144.

4. Where it is called to the attention of the court, or it becomes apparent, that counsel is attempting to get the contents of a book before the jury, over the objection of opposing counsel and over the previous ruling of the court, the fact that he puts it in the shape of a question does not make it admissible, and it is error for the court to permit him to do so. Railway Co. v. Jones, 14 S. W. Rep., 310.

*Harry P. Lawther,* for appellees.—1. The averments in the petition were as specific as in case of a threatened injury of the character complained of they could be made. Jung v. Neraz, 71 Texas, 396; Dunn v. City of Austin, 77 Texas, 146; Lowe v. Cemetery Association, 58 Neb., 106; 46 L. R. A., 238.

2. The rule is that if it be reasonably made to appear that, unless future interments on the land in question be prevented, there would likely or probably result a deprivation of the comfortable use and enjoyment of complainants' property, or an injury to the health or life of complainant and his family, the restraining writ will issue. Kingsbury v. Flowers, 65 Ala., 484; Rouse v. Martin, 75 Ala., 514; both

approved in Dunn v. City of Austin, 77 Texas, 144; Clark v. Lawrence, 59 N. C. (6 John Eq.), 83; 78 Am. Dec., 241; Gilford v. Babies' Hospital, 21 Abb. N. C., 159; 1 N. Y. Supp., 448; Lowe v. Cemetery Association, 58 Neb., 94; 46 L. R. A., 241.

3. A use made by one of his property, whereby his neighbor is deprived of the reasonably comfortable use and enjoyment of his own property—a use made by one of his property which will probably or likely endanger the health and life of his neighbor, is a private nuisance and may be enjoined. Lowe v. Cemetery Association, supra.

An expert in giving his opinion may state facts which are the result of a scientific knowledge or professional skill. It is proper for an expert to disclose in his answer the reasons and ground upon which his opinion is based, in order to give value to that opinion. 8 Eng. Pl. & Pr., 771, and authorities cited.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by appellees, Ferguson, Turner, Skillen, Lawther, Watts, Farrisch, Shaffner, Beeman, Wokaty, McCoy, Kearby and Froelich against appellants, J. T. Elliott, E. C. Smith, G. D. Smith and H. F. Smith, to enjoin, as a threatened nuisance, the location by appellants of a public cemetery on the lands described in appellees' petition. Appellees alleged substantially that appellants had acquired the land described in appellees' petition for the purpose of maintaining upon it a public cemetery for the interment of dead bodies; that in pursuance of such intention they had caused said land to be surveyed and subdivided into a number of lots, which they proposed selling to the public for burial purposes, and had placed on record in the office of the county clerk of Dallas County, a map of said lots; that Ferguson owned a tract of about eight acres adjoining, on the north and west, the lands upon which the proposed cemetery was about to be established; that Skillen, Turner and Froelich owned tracts of lands comprising about four, eight and four acres, respectively, lying to the south of said cemetery lands, the tract of the said Skillen immediately adjoining the same on the south, and that of the said Turner adjoining the Skillen tract on the south, and that of Froelich adjoining Turner's land on the south; that the location of said Ferguson's, Skillen's, Turner's and Froelich's land, with reference to appellants' lands surveyed and mapped for cemetery purposes, was shown by the map or plat thereof attached to appellees' petition.

Appellees further alleged that the said Watts, Farrisch, Kearby and McCoy jointly owned, as tenants in common, a tract of land of about 19 9-100 acres, lying south of said lands subdivided and mapped by appellants for said cemetery, and distant therefrom as per scale shown in said map or plat attached to their petition. Appellees' petition further represented that Lawther, Shaffner, Beeman and Wokaty resided with their families upon land, of which they were seized and possessed in fee, in the near vicinity of the lands to be appropriated by appellants to cemetery purposes, and that the location of their residences was shown on the plat of said cemetery lands; that appellees Ferguson, Skillen, Turner, Froelich, Lawther, Shaffner, Beeman and Wokaty are heads of families, and each reside and have a well of water upon their

respective premises, from which they obtain water for drinking and household purposes; that upon the 19 9-100 acres, owned by the other appellees, there are situated valuable springs of water, known as "Buzzard Springs," which constitute in the main the value of said lands; that the site of said proposed cemetery, together with the lands of appellees, overlies an underground bed of water from which the wells and springs of all of appellees are fed; that the surface of the cemetery property is higher than the lands of all the appellees; that said cemetery property descends in all directions towards the lands of all the appellees, and very rapidly towards the east, south and west in the direction of the lands of appellees Turner, Froelich, Watts, Farrisch, Kearby and McCoy; that the subsoil under the proposed cemetery property is composed of sandy clay and sand, and is loose and porous and will receive and conduct water rapidly; that water falling on the surface of said cemetery would be taken up as rapidly as it falls, and would reach the depth of the water bed mentioned; that the wells of water and springs of water on the lands of all the appellees are fed from this underground bed of water; that the burial of dead bodies in said land proposed to be used by appellants for cemetery purposes would pollute and poison the water in the wells and springs of appellees, would poison and pollute the air about their houses and endanger the health and lives of appellees and their families and render the real estate of all the appellees valueless for residence purposes.

Appellees further alleged, "that noisome odors and vapors would arise from the dead bodies interred in said proposed cemetery and from the soil in which said bodies will be buried, and would pollute and fill with stench and poison the air surrounding appellees' houses, and would destroy the property rights of appellees, in defiance of their comfortable and healthful use and enjoyment of their homes."

Exceptions were urged to appellees' petition, which were overruled, and this action of the court is presented for revision by appellants' first, second and thirty-seventh assignments of error. The substance of the exceptions are: (1) That the petition is vague and indefinite in the statement of the facts on which appellees rely for an injunction, and does not state with certainty and exactness the distance of the proposed cemetery from the wells and springs of appellees, and does not set forth such facts as will show that a nuisance will inevitably result from the establishment of the cemetery proposed; (2) that so much of appellees' petition as complains of the pollution of the atmosphere around and about their houses is too general, vague and indefinite, and fails to set out specifically such facts as entitle them to the injunction prayed for; (3) that appellees' petition does not contain such specific averments of facts as show a cause of action, and such defect is not cured by reference to the map attached as an exhibit to said petition.

It would seem that the map attached to appellees' petition and referred to as part thereof is not such an exhibit as is authorized by rule 19 for the government of the district courts, but if it is, it will not relieve the pleader from the necessity of alleging the facts to which the exhibit relates. Such exhibit, under the rule mentioned and the decisions of this state, can only be looked to in aid and explanation of

necessary allegations, but can not be substituted for or take the place of such allegations themselves. If, however, we were authorized to hold that the map attached to appellees' petition in this case could be looked to to supply the necessary allegations as to the location and distance of their lands from the lands which appellants propose to use for cemetery purposes, still we are of the opinion that the petition is defective and obnoxious to appellants' demurrers in that respect as to some of said lands, unless it can be said that the general allegation that the surface of the cemetery property is higher than the lands of all of the appellees and descends in the direction thereof, is sufficient, without regard to the distance intervening. There are only two tracts, Ferguson's and Skillen's, alleged to be contiguous to the cemetery lands. It is alleged that the 19 9-100 acres owned by Watts, Farrisch, Kearby and McCoy lie south of the cemetery, "and distant therefrom, as per scale shown in said map or plat," attached to appellees' petition. These are all the allegations in reference to the location of that tract, and a resort to the map fails to reveal any such tract at all. The map does not show the number of acres of any tract delineated thereon, but does show, south of the cemetery land, small tracts with the names of Skillen, Turner, and McCoy written upon them; and to the southwest, not south, we find written, within lines supposed to represent a different tract, the names of Watts, Farrisch, Kearby, and a number of persons not parties to this suit. McCoy's name does not appear therein, but does appear in another small tract. There is nothing upon the map by which the 19 9-100 acres mentioned in the petition can be identified or located, and the allegation that it lies south of the cemetery is refuted by the absence of any such tract appearing thereon.

It is said that the lands owned by Lawther, Shaffner, Beeman and Wokaty are situated "in the near vicinity" of the lands to be appropriated to cemetery purposes, and that the location of their residences are shown on the said map; but a reference to the map discloses that there is nothing upon it indicating the location of the appellees' residences or wells, except Shaffner's. There is a small black dot appearing upon Shaffner's tract, with the word "well" written near it. Wokaty's name does not appear upon the map at any place, and we find the name "Lawther" written north of the cemetery land and Ferguson's tract, with no lines indicating the boundaries of his land, and Beeman's to the west in the same condition, both apparently outside of the lines intended to represent the map referred to in the petition, as its exhibit.

We think the petition good in so far as it relates to the location of the land owned by Ferguson and Skillen, and probably Turner, Shaffner and Froelich, but insufficient in respect to the location of the lands owned by the other appellees. Froelich's name, like Wokaty's, does not appear upon the map at all, but it is alleged that his land lies south of Turner's land and contiguous to it, and by a resort to the scale of the map and a mathematical calculation, its distance from the cemetery property may be definitely ascertained. However, the tract south of and adjoining Turner's bears the name of W. O. Watts. It would seem from what appears by appellees' petition and the map attached thereto, that the location and distance of the property of all the ap-

pellees from the cemetery property can be ascertained and alleged with reasonable certainty, and without intending to lay down any general rule, we hold that the allegation in appellees' petition, that the cemetery land is "higher than the lands of all the appellees and descends towards the same," is insufficient, without some further allegation by which it will appear that appellees' lands are in such close proximity to the cemetery as makes it reasonably certain that injury will accrue to them by reason of the alleged threatened nuisance.

We do not agree with the contention of appellants' counsel that the facts must be alleged showing that a nuisance will "inevitably" result from the establishment of the cemetery upon appellants' lands. The rule applicable to the pleadings in such cases, as we understand it, is that the petition must allege such facts as show with cogency, clearness and reasonable certainty, that the acts threatened, if done, will bring into existence a nuisance, and that the complainants will suffer irreparable injury thereby. Some expressions will be found, perhaps, in adjudicated cases indicating that it must appear from the facts alleged and proof thereof, with absolute certainty, that a nuisance will be created by the acts threatened, if completed, and injury result therefrom, in order to warrant the interposition of the preventive powers of a court of equity; but we believe a careful analysis of those decisions will disclose that no greater certainty in the particular referred to than expressed in the language here used is required, and that they are in fact in accord with rule above announced. Dunn v. City of Austin, 77 Texas, 139, and authorities there cited.

We think appellants' exception to that part of appellees' petition wherein it is alleged that, as a result of the burial of dead bodies in the proposed cemetery, "noisome odors and vapors would arise and pollute and fill with stench and poison the air surrounding appellees' homes," etc., should have been sustained. A cemetery is not necessarily a nuisance, but may become so from location and the manner of its use. It can not be said that the emission from the ground of foul and sickening odors is the ordinary or necessary result of the interment of dead bodies therein, and where the establishment or maintenance of a cemetery is sought to be enjoined on that ground, we believe the manner of burial or other extraneous facts and circumstances must be alleged, showing with reasonable certainty that such a result has or will follow therefrom. Until the contrary appears, it will be presumed that, in the management of the cemetery, the establishment of which is sought to be restrained in this suit, the appellants will observe that fundamental maxim "Sic utere tuo, ut alienum non laedus." There is no averment whatever as to the contemplated mode of sepulture, and it is not made to appear by any allegation in appellees' bill that a method differing from that commonly employed in the interment of the dead in this country will be adopted, or that the conditions of the cemetery in question, or effects thereof, will be other than those common to every graveyard in the land. We regard the allegations of appellees, that "offensive odors and vapors dangerous to their health and injurious to the value of their property will arise and pollute the air about their homes," the statement of a mere conclusion of the pleader and insufficient to warrant a recovery

upon that phase of this case. Dunn v. City of Austin, supra; Kingsbury v. Flower, 65 Ala., 84; Adams v. Michael, 38 Md., 123; Rouse v. Martin, 75 Ala., 514; Barnes v. Hathorn, 54 Me., 124; Town of Lake View v. Letz, 44 Ill., 81. Furthermore, we are of the opinion, and state it in this connection, that the evidence did not sufficiently raise this issue to authorize its submission to the jury.

The court instructed the jury that "the use of one's land for cemetery purposes is not of itself a nuisance, but in order for such use to become a nuisance, conditions must exist or circumstances arise which will render such grounds for the burial of the dead dangerous to life or health, or in some way destroy the reasonable and comfortable use of the premises of those who reside in the vicinity of the grounds so used." The language of this charge "or in some way destroy," etc., is assigned as error. It is contended that the use of the language complained of was calculated to mislead the jury and cause them to believe that they were authorized to consider the proximity of the proposed cemetery to appellees' houses and the mental disquietude the mere view of the same would occasion them, in determining whether or not appellees were entitled to the writ of injunction prayed for. We think the language objectionable and calculated to have the effect upon the jury suggested. Especially is this true, in our opinion, in view of certain improper expressions or statements of the appellees, interwoven with legitimate testimony given by them, bearing upon the effect the location of the cemetery, as proposed, would have upon the value of their property and the further occupation thereof by them. The mere proximity of the proposed cemetery to appellees' property and the consequent depreciation of its value thereby affords them no right of action to restrain the establishment thereof. Neither will a court of equity afford protection against an imaginary or fanciful wrong and injury. However cheerless or disagreeable the view of the cemetery in question may be to appellees, and no matter what unpleasant or melancholy thoughts the same may awaken, no reason is thereby shown why appellants should be restrained from making such use of their property, so long as the same does not create a nuisance by polluting the water of their springs and wells, or the air in and about their homes. In this connection appellants requested the following instruction: "You are instructed that, although the establishment of the proposed cemetery of defendants may be objectionable to plaintiffs on account of the proximity to their residences, and also on account of the effect on the minds of themselves and their families, by reason of the sight of frequent funeral processions, and their constant view of tombstones, you will not consider these facts in arriving at your verdict, nor be influenced by them." If a charge was called for on this subject, the special charge should have been given. The prejudicial effect of the language of the main charge complained of was not removed by other paragraphs of that charge. The similar instruction contained in the third paragraph of the main charge, which might have had that effect, was practically nullified by the qualification thereof.

It appeared that only a part of the land described in appellees' petition had been platted and was intended to be used for cemetery purposes. At the request of appellants the court charged the jury not to consider

the effect burial on the property not platted would have on appellees' wells and springs of water or the air in and about their homes. In the main charge however, the jury were told, if they found certain facts to exist, they would find that the injunction should issue as prayed for by appellees. The prayer comprehended the entire tract, and the verdict and judgment is in accordance therewith. It is complained that these charges are conflicting, and that so much of the verdict and judgment as applies to the land not platted and intended to be used for cemetery purposes, is wholly without law or evidence to support it. Had the answer of appellants described this land, we think the contention should have been sustained.. Appellants should not be placed in the attitude of having the questions involved in this suit res adjudicata as to their lands not intended to be used for cemetery purposes. There are about eighty-seven acres in the entire tract, and only about forty intended to be converted into a cemetery.

Appellees Beeman and Ferguson were permitted to state, over the objections of appellants, in substance, that the location of the cemetery upon the lands described in appellees' petition would make their homes valueless and force them to abandon them for the reason that they could not and would not drink water off of dead people. Whether or not the alleged bed of water underlying the proposed site of the cemetery would become polluted and reach appellees' wells and springs and injuriously affect the value of their property was the very question which the jury were called upon to decide. The statement objected to was but the expression of an opinion, and the witnesses not having qualified as experts upon the subject upon which they were called to speak, the statement should have been excluded.

We also think that Dr. J. H. Smart sufficiently qualified himself to speak as a medical expert, and that the court erred in excluding his testimony as shown by appellants' twenty-third and twenty-fourth assignments. The bills of exceptions presenting this action of the court are doubtless defective in that they failed to state what appellants expected to prove by the witness, but in view of the fact that the case will be remanded, we deem it advisable to so far notice the same as to express our disapproval of the trial court's ruling in the matter. The testimony bore upon the vital issue in the case, and will likely be offered upon another trial.

The court erred in permitting appellees' counsel, over the objections of appellants, to recount in detail to the witness, Dr. Smart, the history of the typhoid fever epidemic at Lauren, Switzerland, and of the experiments made to determine whether disease germs had been conveyed in water filtered through the ground for a distance of one mile, and ask if such statement was not a correct report of the facts. The bill reserved to the action of the court in permitting this procedure does not show that counsel's statement was read from a book, but it occurs to us that the practical effect was the same, and that the rule governing in the one case is applicable to the other. In the case of the St. Louis A. & T. Ry. Co. v. Jones, 14 S. W. Rep., 310, it appears that counsel read from a book on science and the art of surgery, and it was there said that "Books of science are not admissible in evidence to establish the doctrines

therein affirmed . . . ." And that, "what can not be done directly, can not be done indirectly, as was attempted in this case. The effect of reading from the books, and having its correctness passed upon by an expert witness, was to put the passages and extracts approved by the witness in evidence." No practical difference is perceived in this course and in an accurate quotation from the book with the approval thereof by the witness. The same effect is obtained and result accomplished.

We think the court also erred in permitting the witness, T. J. Oliver, to state his experience with the city council of the city of Sherman, in an effort, under contract, to supply that city with water, to the effect that he had arranged to procure his water supply from a place near the cemetery, and that just before he proceeded with his contract he was waited upon by the city council and other officials of that city and informed that he could not proceed further on account of the proximity of the cemetery to his proposed water supply. This testimony was certainly very damaging to appellants, and notwithstanding the court attempted to cure the error in permitting the statement to be made in the presence and hearing of the jury by telling them not to consider it, still it is likely an impression was made and fixed in the minds of the jurors that could not thus be removed. The admission of irrelevant and incompetent testimony so hurtful to the litigant by reason of its effect upon the jury, relying upon a withdrawal of it to repair the damage, is a dangerous practice and not to be commended.

Assignments not discussed, in our opinion, present no error, or if they do, such error will not likely occur upon another trial.

We have been asked to reverse this case and render judgment on the facts for appellants. This we do not feel authorized to do, and hence have refrained, in view of another trial, to discuss the evidence. For the errors pointed out the judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

The trial court charged the jury that "the burden of proof is on the plaintiffs to show beyond a reasonable doubt that the use of the grounds for cemetery purposes will probably result in poisoning the water in their wells and springs, or in contaminating the atmosphere of their homes," etc. We are asked by appellees, in the event their motion for rehearing is overruled, and in view of another trial of this case, that we express our views as to the correctness of the above charge. These views are practically expressed in the original opinion, in discussing the contention of appellants to the effect that facts must be alleged showing that a nuisance will "inevitably" result from the establishment of the cemetery upon appellees' lands. The rule therein stated, as applicable to such case, is not in accord with the above charge, and the enunciation of the rule clearly manifests our disapproval of the charge. In the case of Sparks v. Dawson, 47 Texas, 138, the court had under consideration a charge endeavoring to inform the jury of the degree of certainty required in the establishment of fraud, and Judge Roberts said: "To require the

facts to be established by evidence with that absolute certainty which fixes in the minds of the jury a conviction that excludes all reasonable doubt of their existence, as if it were a case of murder or treason, is not a rule applicable to this or any other civil cause." See also Heiligmann v. Rose, 81 Texas, 222. It has been uniformly held in cases where the rule of evidence requires that the proof shall be clear and satisfactory of the fact sought to be established, that to so charge the jury in terms was error. We are of the opinion that the charge in question imposed a greater degree of certainty on the part of appellees in the establishment of the facts alleged than required in civil cases.

Our views upon other matters requested are sufficiently shown by the original opinion.

The motion for rehearing is overruled.

*Overruled.*