*C. C. King* and *Erle B. Askew,* for plaintiff.

*Jones, Park & Johnston* and *J. H. McCalla,* for defendant.

---

HALLMAN, trustee, *et al. v.* ATLANTA CHILD'S HOME *et al.*

1. It is insisted by plaintiff in error that the action of the county commissioners in granting the permit was judicial or quasi judicial, and certiorari the remedy to review the judgment. Under the ruling in *Daniel* v. *Commissioners,* 147 *Ga.* 295 (93 S. E. 887), and *City of Atlanta* v. *Blackman,* 153 *Ga.* 499 (113 S. E. 545), and in view of the fact that the act of the General Assembly delegating the power does not require any notice or hearing, the action was not judicial, and certiorari was not the remedy.

2. The grant of the permit in this instance, by a majority vote of the commissioners of Fulton County is a valid and legal exercise of the board's authority.

3. It is also insisted that in granting the permit the board of county commissioners ignored or violated that section of the charter of the City of Atlanta providing that no cemetery should be located within four miles of the center of the City of Atlanta. A reference to the permit granted by the county commissioners will show that the permit actually granted limited the land to be used as a cemetery to such territory within the described land as was without that four-mile limit; so that that question is not in the case.

4. It is insisted that the board of county commissioners ignored the advice of the planning commission of the City of Atlanta. The reply is that the board of county commissioners, under the law, are not required to accept the advice of the planning commission; and furthermore, in this instance the advice of the planning commission was offered to the board of county commissioners *after* the latter had acted upon the matter in question.

5. A permit for the use of land for cemetery purposes may be granted by

the board of commissioners of roads and revenues of Fulton County without first complying with the act of 1920 (Acts 1920, p. 729) requiring persons who intend to subdivide the land to first make a plat and obtain the approval thereof by the city planning commission of Atlanta. Permit may be granted, after which the requisite authority to make subdivisions may be obtained by submitting the plat mentioned in said act of 1920.

6. The act of 1910 (Ga. Laws 1910, p. 130) empowers the board of county commissioners of Fulton County "to grant or refuse permission to establish, outside of the limits of incorporated towns, cemeteries, hospitals, sanatoriums, or similar institutions," under such regulations "as they may deem proper for the public good." Where this power has not been exercised arbitrarily and capriciously, courts of equity will not interfere. If arbitrarily and capriciously exercised, such would be an abuse of their discretion, and in such circumstances equity would be authorized to impose its restraining power. In this case there was no abuse of discretion by the commissioners.

No. 4843. November 13, 1925.

Injunction.    Before   Judge   Ellis.    Fulton   superior   court. March 14, 1925.

The petition was brought by Atlanta Child's Home (a number of other persons became parties plaintiff by intervention) against T. A. Hallman, trustee, and the individuals composing the board of commissioners of roads and revenues of Fulton County. The prayers were, that Hallman, his successors, assigns, agents, and cestuis que trust be restrained by injunction from taking any action looking to the establishment of a cemetery for colored people upon described real estate adjacent to the City of Atlanta, and particularly from interring any corpses upon the same, or making any subdivision thereof without first having a plat thereof approved in writing by the city planning commission of Atlanta; that no plat of the same be offered for record without the approval of said planning commission; and that the commissioners of roads and revenues of Fulton County be restrained from taking any further steps looking to the establishment of said cemetery, and particularly from promulgating rules and regulations relating thereto; and that the permit previously granted by the commissioners be revoked and declared null and void; for general relief and process. Upon hearing had the court granted an interlocutory injunction. To that judgment the defendants below excepted. The record discloses that Hallman, "as trustee," for himself and others, made application to the commissioners of roads and revenues of Fulton County for permit to establish the cemetery in

question upon the property described. The commission published in Fulton County Daily Report a notice that a hearing would be had upon the matter at 2:30 p. m., Dec. 26, 1924. This notice indicated that it was to be published four times, to wit, in the issues of Dec. 12, 15, 18, and 26, 1924. Because of the fact that the publication would not be issued on December 26 until after the time appointed for the hearing before the commissioners, the last notice was published in the issue of Dec. 24, 1924. A number of the petitioners in this case appeared at the hearing before the commissioners and objected to the issuance of the permit, and moved that because of the imperfect compliance with respect to publication of the notice, as required by the board, said hearing be not had. The commissioners overruled this motion, and by a vote of three to two granted the permit.

The petition alleges that in taking this action the commissioners abused their discretion; that said permit was granted without evidence to support it, and is contrary to the general welfare, safety, and health of that portion of Fulton County; that said permit was granted without the applicant having put up a single witness to testify as to the necessity for a cemetery or the suitability of the place in question; that counsel for applicant admitted that the proposition was a commercial venture; that petitioners who appeared before the meeting of the commissioners in opposition to the grant of the permit showed at the time that there was no necessity for another colored burying-ground in Fulton County, and that the particular place chosen was not suited for the purposes intended; that the burial grounds then in existence in the county for colored people would furnish sufficient accommodation for at least seventy-five years; that Hallman in making the application, and the commissioners in granting the same, had ignored the act of the General Assembly of Georgia creating the city planning commission, which makes it the duty of said planning commission to "study and propose such measures as may be advisable for the promotion of public interest, health, morals, safety, comfort, convenience, and welfare of said city. In this connection, said commission shall have authority to make similar suggestions to the general council, the commissioners of roads and revenues of Fulton County, and the General Assembly of Georgia, with reference to an area covering six (6) miles adjacent to the

present limits of the City of Atlanta;" that the location of the proposed cemetery is within four miles of the City of Atlanta; that Hallman is proposing to subdivide the property described into more than five lots without having first submitted to the planning commission an accurate plat of the same and without having such plat recorded in the office of the clerk of the superior court; that the planning commission, on Jan. 12, 1925, passed a resolution reciting that the establishment of the cemetery at the proposed location would be detrimental to public interest, health, morals, safety, comfort, convenience, and welfare, and requesting the commissioners to revoke the permit already granted; that said permit is void for the reason that it includes land within four miles of the center of the City of Atlanta, which is contrary to the statutes of the State; that the petitioner, Atlanta Child's Home, owns, in close proximity to the proposed location for said cemetery, property of the value of seventy-odd thousand dollars; that at the time it was caring for sixty-odd children at its home upon its property; that it was organized and supported by charitable persons for the purpose of rearing unfortunate children, under healthful, moral, and comfortable conditions, to be useful citizens; that the location of the cemetery in such close proximity to the home will have a very undesirable effect upon the children; that all funerals happening at the cemetery would come under the observation of the children at its home.

It is also alleged that the territory in which the property of petitioners is located is one in which within very recent years beautiful thoroughfares have been built and said section has become beautiful and attractive to home owners and builders; that a great many people have gone into this section and built homes; that other people will rapidly come to said section and establish homes; that the property is reasonable in value, well served by good roads, and near to the City of Atlanta, churches and schools, lies high and is well drained, and is in every way desirable for suburban homes of people of ordinary means; that the location of said cemetery will introduce into the community a very hurtful and depressing situation; that the community is distinctly a white section, and the environment and surroundings do not naturally permit the location of a colored cemetery in their midst; that colored cemeteries should be located in communities that are

distinctly colored, and there are such around Atlanta as accessible as the proposed location; that the location of the cemetery as proposed would cause the value of the properties of petitioners to depreciate anywhere from ten to fifty per cent.; that this depreciation will far exceed the value of the proposed cemetery, even after it should attain the height of its value and desirability; that the location of the cemetery as proposed will be a nuisance as to petitioners, and should be forbidden by the court; that it will work unnecessary, unfair, and unreasonable damage; that the location of the cemetery as proposed will tend to divide the community, making it in part colored and in part white; and that this will lead to more or less friction, strife, and race antipathy, which should be avoided.

The answer filed by Hallman denied all the material averments of the petition, and pleaded particularly that "the tract of land covered by the permit lies more than four miles from the center of the City of Atlanta. No part of the same is within the four-mile radius. The extreme western boundary of that portion of the land that is located on the north side of Simpson Road extends westward to a point six hundred (600) feet east of the Hightower Road. That portion of the land covered by the permit which lies south of Simpson Road is separated from the Hightower Road by a large tract of land known as the Hightower property, comprising, by estimation, one hundred acres or more. The western boundary of said tract is Hightower Road, on which fronts the Child's Home. The eastern boundary is covered with a tract of woods of some twenty-five or thirty acres, on account of which the cemetery tract is not even in sight of the building occupied by the Child's Home. In granting the permit the county commissioners placed therein a restriction compelling an offset of three hundred feet separating the cemetery lands from the Hightower tract on the one hand and from the tract of Mr. Wood on the other hand, which lies north of the Simpson Road, thus providing that there shall be at least a strip of land three hundred feet wide between the cemetery land and its nearest neighbor;" that the provisions with reference to the planning commission are not intended to apply to cemetery lots; that the grant of the permit by the commissioners was regular in every way; that Hallman and his associates had paid $82,000 upon the purchase of the property;

that this money was realized largely from prospective stockholders in said enterprise, who paid their money for the purchase of said lands upon the faith and solely on account of the permit which had been granted by the commissioners. The answer filed by V. B. Moore, the only member of the board of commissioners served, denies the material averments of the petition relating to the commission.

At the hearing the petitioners introduced evidence in support of the averments of the petition, that there is no necessity for an additional colored cemetery in Fulton County; that the values of property in the neighborhood would be materially affected by the location of the cemetery as proposed; that it would to a large measure destroy the value of the property owned by Atlanta Child's Home and render it unsuitable for the purposes for which it was being used. The defendants introduced evidence to support the allegation of the answer, to the effect that there is great need for an additional colored cemetery; and also introduced a plat showing the location of the cemetery as proposed with reference to surrounding property. Other allegations of the petition are stated in the opinion.

*Bryan & Middlebrooks, Colquitt & Conyers, H. A. Etheridge,* and *C. B. Shelton,* for plaintiffs in error.

*Candler, Thomson & Hirsch, Alston, Alston, Foster & Moise,* and *Key, McClelland & McClelland,* contra.

GILBERT, J. The act of 1910 (Acts 1910, p. 130, Park's Ann. Code, §§ 1676(nn), 1676(oo)), provides as follows: "In all counties in this State having a population of one hundred and twenty-five thousand, or more, the board of county commissioners, or, if there be no such board, the ordinary of said county, shall have the power to grant or refuse permission to establish, outside of the limits of incorporated towns, cemeteries, hospitals, sanatoriums, or similar institutions. Said county authority, as above stated, may grant permission to establish such institutions under such regulations as they may deem proper for the public good." The act quoted does not contain on its face any restriction upon the power of the board of county commissioners. It provides for no notice— no hearing. It does not empower the commissioners to revoke the permit once granted. However, we will assume, for the purposes of this case, that the legislature, in granting this power to the

board of commissioners, intended that the power should be reason-
ably exercised, as in the grant of police powers to municipalities,
and that an arbitrary and capricious exercise of such power would
be an abuse of discretion. Compare *Blackman Health Resort* v.
*Atlanta,* 151 *Ga.* 507 (5) (107 S. E. 525, 17 A. L. R. 516), and
authorities cited. The learned judge of the superior court, in
passing upon the petition for injunction in this case, was neces-
sarily restricted to the issue as to whether the board of commis-
sioners of roads and revenues of Fulton County acted arbitrarily
in granting the permit and refusing to revoke the same, or whether
their actions constituted a reasonable exercise of the powers dele-
gated in the act of the General Assembly. It was not a question
of the exercise of a reasonable discretion upon the part of the
judge of the superior court on the evidence adduced before him at
the interlocutory hearing. The judge's decision turns, not upon
discretion, but upon law. In other words, the writ of error' pre-
sents a question of law. The permit to establish the cemetery
had already been granted, and on petition to revoke the permit
the commissioners had refused. This is alleged in the petition.
The power to grant the permit had already been exercised by the
very tribunal to whom the power had been delegated by the sover-
eign State. If the commissioners did not abuse their discretion,
their action could not be controlled by a court of equity. A ceme-
tery is not a nuisance per se. This has been definitely determined
by the Supreme Court. *Harper* v. *Nashville,* 136 *Ga.* 141 (70 S.
E. 1102). That decision fixes the law on that subject in this
State. It is in line with the unbroken declarations of courts of
last resort elsewhere. The petitioners in that case alleged, and the
evidence tended to show, that the cemetery would adversely affect
adjacent property values; and the evidence conflicted on the ques-
tion of contaminating water. In the opinion it was said: "Ceme-
teries are a necessity. A place where the dead may be given decent
Christian burial must be established, and the location of such must
necessarily be upon some tract of land more or less suitable and
commodious; and it is impossible to find a tract of land that is
not contiguous to the lands of some one else. And inasmuch as
cemeteries must be established and should be located where they
are reasonably accessible, it is rarely possible to so fix their loca-
tion, when they are designed for the use of a populous town or city,

where they will not be in more or less close proximity to some residence; and unless the soil of the land used as a cemetery and that of the contiguous owners is such as to cause a drainage which will produce a contamination of the waters, thereby putting in jeopardy the health or lives of the owners of the contiguous lands and the health of their families, or unless the air would be contaminated, courts of equity will not interfere by the grant of injunctive relief to prevent the establishment and location of the cemetery. Cemeteries are not per se nuisances, and it is only in exceptional cases that their establishment and location would be enjoined by a court of equity. Where it is shown that the location of a cemetery in some place would contaminate the water used for drinking purposes or for watering cattle or other domestic animals, and that thereby the health of the residents upon the adjacent lands would be endangered, and that some other place sufficiently convenient and accessible could be procured, and that the location of the cemetery at the latter place is not objectionable upon any valid ground, equity might interfere to prevent its location in the place where it is shown there are 'sound reasons for apprehending danger to the life or health of those residing nearby. In this connection see the case of Elvina Braasch *v.* Cemetery Assn., 69 Neb. 300 (95 N. W. 646, 5 Ann. Cas. 132, and cases cited in the note) ; 5 Am. & Eng. Enc. Law, 791; Ex parte Wygant, 39 Or. 429 (64 Pac. 867, 54 L. R. A. 636, 87 Am. St. R. 673, and notes). The authorities cited above cover fully the principal question involved in this case." That decision was concurred in by all six of the Justices, and it is as binding on this court as a statute of the General Assembly. Civil Code (1910), § 6207; *Lucas* v. *Lucas, 30 Ga.* 202 (76 Am. D. 642) ; *Heard* v. *Russell, 59 Ga.* 25, 54. In Rea *v.* Tacoma Mausoleum Association, 103 Wash. 429 (174 Pac. 961, 1 A. L. R. 541), it was said: "Cemeteries are not, necessarily, even shocking to the senses of ordinary persons. Many are rendered attractive by whatever appropriate art and skill can suggest, while to others of morbid or excited fancy or imagination they become unpleasant, and induce mental disquietude from association, exaggerated by superstitious fears. The law protects against real wrong and injury combined, but not against either or both when merely fanciful. The human contents of these graves can not, as they lie buried there, offend the senses in a legal point

of view. The memorial stones alone affect the senses, and the same would result to the superstitious, though nothing human lay beneath them. If this burial ground is, under the circumstances, a private nuisance, then it is also a public nuisance to every traveler who passes on that road. No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. Among the decisions holding in harmony with those above quoted from, we note the following: Lambert v. Norfolk, 108 Va. 269, 17 L. R. A. (N. S.) 1061, 128 Am. St. Rep. 945, 61 S. E. 776; Dunn v. Boston, 77 Tex. 139, 11 S. W. 1125; Elliott v. Ferguson, 37 Tex. Civ. App. 40, 83 S. W. 56; Woodstock Burying Ground Asso. v. Hager, 68 Vt. 488, 35 Atl. 431; Clinton Cemetery Asso. v. McAttee, 27 Okla. 160, 31 L. R. A. (N. S.) 945, 111 Pac. 392; Musgrove v. St. Louis's Church, 10 La. Ann. 431; Westcott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490. In the last-cited case this view of the law was applied to an undertaking establishment." That case goes much further than the case before us.

Thus it would seem that if any question is well settled it is that a cemetery is not a nuisance per se. It is a lawful and essential institution. That does not mean that a cemetery may not become a nuisance, and if this one should become such it may be closed or restrained by a court of equity. *Blackman v. Atlanta,* 151 *Ga.* 507 (supra), and authorities cited; In re Bohen, 115 Cal. 372 (47 Pac. 55, 36 L. R. A. at p. 620). See the latter case on the power to prohibit cemeteries within cities. The evidence was conflicting as to the distance between the Child's Home building and the nearest point of the land included in the permit. The following map which was introduced in evidence will serve to throw light upon that question:

It is not alleged in the petition for injunction nor suggested in the evidence that the proposed cemetery will pollute or otherwise render unfit the water on the land of petitioners. Aside from opinion evidence as to whether additional cemetery space was needed for colored people, the only evidence of probative value on the part of the plaintiffs bearing on the issue is to the effect that

the cemetery will reduce the value of surrounding lands. It is well settled that causing depreciation in value of adjacent or near by property will not authorize a court of equity to enjoin the owners of land from subjecting it to lawful purposes. In the *Harper* case, supra, it was contended that the cemetery would "cause a depreciation in the market value" of the adjacent land of the petitioner. In re Bohen, supra. Compare Winchester *v.* Ring (312 Ill. 544, 144 N. E. 333, 36 A. L. R. 520).

It also appeared that Hallman, the applicant, had at a previous meeting submitted his petition for a permit to locate a cemetery, and at that meeting evidence was heard on the part of some witnesses that additional colored cemetery space was essential to the colored population of Atlanta, while other witnesses testified to the contrary. The meeting was adjourned, and at the next monthly meeting the petition was renewed, but the location of the land was changed to the site involved in the present controversy. The subject, therefore, of the necessity for additional space for colored cemeteries on the application of the same party had been before the commissioners and they had heard evidence on the subject. It was not necessary for the commissioners to go over that ground again after they had so recently heard numerous witnesses on the subject. As stated above, the statute does not require the commissioners to hear evidence. They need not have heard it. They could have acted upon their own information, acquired in any manner that they deemed best. If the act had required a hearing and the introduction of evidence, then the proceeding of the commissioners would have been converted into a judicial act, and in that event certiorari would have been the appropriate remedy. *Daniel* v. *Commissioners of Pilotage,* and *City of Atlanta* v. *Blackman,* supra. Necessarily in such case equity could not afford any relief. The evidence before the judge of the superior court on the hearing for injunction could only be considered in so far as it might throw light on the question of whether the board of county commissioners abused their discretion. Considered on the question of whether the county commissioners acted arbitrarily or in a reasonable manner, it is plain to us that the evidence before the judge was not sufficient to show that the county commissioners abused their legal discretion, rendering the grant of the permit void. Petitioners seem to assume that an exception might be made

17

under the law in the case of a "colored cemetery." For instance, the petition contains the following allegation: "Plaintiffs further allege that the atmosphere of a colored cemetery is that of superstition and gruesomeness, and is calculated to unduly arouse the emotions and superstitions of the young, as it is well known that the colored race is extremely emotional and given to much demonstration at the funerals of their dead. All the funerals and happenings thereat will come under the observation of the West Simpson and the Hightower road neighborhoods, and particularly under the observation of the children in the Atlanta Child's Home, and will arouse in their little minds a morbid curiosity, and will keep their sympathies and emotions constantly in a sorrowful and mournful state, and they will grow up, having their fears and superstitions unduly accentuated, all of which will work to hurt of their welfare. And that the establishment of said cemetery would be a nuisance." It is sufficient to say that the law declared by courts is intended to be such as is applicable to all classes of persons; a decision in one case becomes a binding precedent in another. Moreover, such universality is essential both in preservation of good morals and in obedience to the supreme law of the land. There is as much necessity for the burial of negroes as for the burial of whites. Negroes are, in the main, useful and desirable citizens. Agriculture, industry, and domestic comfort and sundry other avocations call for their services. Finally it is enjoined in the thirteenth amendment to the constitution of the United States: "No State shall make or enforce any law which shall . . deny to any person within its jurisdiction the equal protection of the laws."

It follows, from the fact that the applicants had already, in the manner prescribed by law, obtained a permit to use definite land, in the grant of which the commissioners are not shown to have abused their discretion, that the grant of an interlocutory injunction was error. *Judgment reversed. All the Justices concur.*