GRUBBS *et al. v.* WOOTEN *et al.*

No. 12880.   November 14, 1939.   Rehearing Denied December 5, 1939.

William A. Thomas, for plaintiffs.

E. Harold Sheats, for defendants.

ATKINSON, Presiding Justice. 1. By the allegations of the petition that was dismissed on general demurrer, the business involved in this case is that of display and sale of tombstones and monuments designed and intended to be placed over the graves or bodies of deceased persons, such business having recently been commenced and still conducted in an exclusively residential section of the City of Atlanta. The ground of complaint is that operation of the business at that place is harmful to the petitioners and others in the vicinity, affecting their health and property and causing irreparable damage that should be enjoined. In the brief of the attorney for the plaintiffs it is stated: "We do not claim that the cemetery-like display is necessarily a nuisance per se, but we do claim that it can be a nuisance per accidens, and that the case should have been retained rather than dismissed on demurrer." Thus the controlling question as raised by the special assignments of error, as shown in the statement of facts and insisted on in the brief is reduced to that of enjoining a nuisance. It is declared in this State: "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious tastes, but it shall be such as would affect an ordinary reasonable man." Code, § 72-101. Citing and applying this law, it was held in Thrasher v. Atlanta, 178 Ga. 514 (173 S. E. 817, 99 A. L. R. 158), that an airport is not a nuisance per se, although it might become a nuisance from the manner of its construction or operation; and further that "Mere apprehension of injury from the falling of planes is not sufficient to authorize an injunction against aerial navigation over the property of the complainant." In Holman v. Athens Empire Laundry Co., 149 Ga. 345, 350 (100 S. E. 207, 210, 6 A. L. R. 1564), it was said: "Every

one has the right to use his property as he sees fit, provided that in so doing he does not invade the rights of others unreasonably, judged by the ordinary standards of life and according to the notions of reasonable men. The right to use one's property as he pleases implies a like right in every other person; and is qualified by the doctrine that the use in the first instance must be a reasonable one. . . That the business itself is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste would prefer its removal, is not sufficient. Applying the foregoing principles to the case in hand, the defendant may make use of its property, and carry on any business not per se a nuisance, that produces no unnecessary, unreasonable, unusual, or extraordinary impregnation of the air with smoke or soot, to the sensible inconvenience and discomfort of plaintiff's tenants, or to the actual, tangible, and substantial injury of plaintiff's realty."

In *Austin* v. *Augusta Terminal Co.,* 108 *Ga.* 671, 677 (34 S. E. 852, 854, 47 L. R. A. 755), may be found this statement: "If a great manufacturing plant had been erected on the adjoining lot, the market value of plaintiff's house might have been greatly injured, no matter how silent the operations of the mill. Properly conducted, decently appointed, and orderly-managed stores, shops, factories, and business houses, erected in close proximity to residential quarters, frequently cause great depreciation in values; in the popular sense, they cause damage, but in such cases the annoyances, the inconveniences occasioning the loss in value, are not actionable, because they arise from lawful uses. The owners of these establishments are as much entitled to the use and enjoyment of their property as is the owner of the residence property reduced in value by their presence." In *Standard Oil Co.* v. *Hahn,* 165 *Ga.* 575, 580 (141 S. E. 643), it was said: "In determining this feature of the case [noises at filling stations] we must apply common sense and common experience. None of these noises are alleged to be unnecessary and unreasonable. They are the ordinary noises incident to the operation of filling-stations. Those arising from the back-fire of engines are not due to the operation of the filling-station but to the operation of automobiles and trucks. It is true that some noises may be created by taking off and putting on tires; but, as we have seen, these noises are necessary incidents of this

work. Petitioner describes both classes of these noises as 'loud, roaring noises.' But we can not hold that this designation is apt and correct. Some noise will attend the taking off and putting on of tires at this station; but they are not necessarily so loud and so roaring as to disturb the sleep of petitioner and his family in his residence. It involves some stretch of the imagination and undue apprehension to hold that these noises will so disturb the sleep of petitioner and his family as to impair their health. We do not think that the ordinary use of a filling-station is so serious a matter as to disturb the sleep of nearby residents, and impair their health. The usual noises incident to its operation do not have such direful results." All of the foregoing with other cases of similar import are cited and applied in the recent case of *Wilson* v. *Evans Hotel Co.*, 188 *Ga.* 498 (4 S. E. 2d, 155), where, among other things, it was said that "erection and operation of gasoline filling-stations are not nuisances because they are erected in residential sections and in close proximity to residences."

In *Harper* v. *Nashville*, 136 *Ga.* 141 (70 S. E. 1102), involving nuisances created by location of cemeteries, it was said: "Cemeteries are a necessity. A place where the dead may be given decent Christian burial must be established, and the location of such must necessarily be upon some tract of land more or less suitable and commodious; and it is impossible to find a tract of land that is not contiguous to the lands of some one else. And inasmuch as cemeteries must be established and should be located where they are reasonably accessible, it is rarely possible to so fix their location, when they are designed for the use of a populous town or city, where they will not be in more or less close proximity to some residence; and unless the soil of the land used as a cemetery and that of the contiguous owners is such as to cause a drainage which will produce a contamination of the waters, thereby putting in jeopardy the health or lives of the owners of the contiguous lands and the health of their families, or unless the air would be contaminated, courts of equity will not interfere by the grant of injunctive relief to prevent the establishment and location of the cemetery. Cemeteries are not per se nuisances, and it is only in exceptional cases that their establishment and location would be enjoined by a court of equity. Where it is shown that the location of a cemetery in some place would contaminate the water used for drinking pur-

poses or for watering cattle or other domestic animals, and that thereby the health of the residents upon the adjacent lands would be endangered, and that some other place sufficiently convenient and accessible could be procured, and that the location of the cemetery at the latter place is not objectionable upon any valid ground, equity might interfere to prevent its location in the place where it is shown there are sound reasons for apprehending danger to the life or health of those residing nearby. In this connection see the case of Elvina Braasch v. Cemetery Assn., 69 Neb. 300 (95 N. W. 646, 5 Am. & Eng. Ann. Cases, 132, and the cases cited in the note); 5 A. & E. E. Law, 791; Ex parte Wygant, 39 Ore. 429 (64 Pac. 867) [54 L. R. A. 636], and the notes thereto in 87 Am. St. R. 673. The authorities cited above cover fully the principal question involved in this case."

In Rea v. Tacoma Mausoleum Association, 103 Wash. 429 (174 Pac. 961, 1 A. L. R. 541), it was said: "Cemeteries are not, necessarily, even shocking to the senses of ordinary persons. Many are rendered attractive by whatever appropriate art and skill can suggest, while to others of morbid or excited fancy or imagination they become unpleasant, and induce mental disquietude from association, exaggerated by superstitious fears. The law protects against real wrong and injury combined, but not against either or both when merely fanciful. The human contents of these graves can not, as they lie buried there, offend the senses in a legal point of view. The memorial stones alone affect the senses, and the same would result to the superstitious, though nothing human lay beneath them. If this burial ground is, under the circumstances, a private nuisance, then it is also a public nuisance to every traveler who passes on that road. No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. Among the decisions holding in harmony with these above quoted from, we note the following: Lambert v. Norfolk, 108 Va. 259, 269, 17 L. R. A. (N. S.) 1061, 128 Am. St. Rep. 945, 61 S. E. 776; Dunn v. Boston, 77 Tex. 139, 11 S. W. 1125; Elliott v. Ferguson, 37 Tex. Civ. App. 40, 83 S. W. 56; Woodstock Burying Ground Assn. v. Hager,

68 Vt. 488, 35 Atl. 431; Clinton Cemetery Assn. v. McAttee, 27 Okla. 160, 31 L. R. A. (N. S.) 945, 111 Pac. 392; Musgrove v. St. Louis's Church, 10 La. Ann. 431; Westcott v. Middleton, 43 N. J. Eq. 478, 11 Atl. 490. In the last-cited case this view of the law was applied to an undertaking establishment." The case from which this excerpt is taken, and the case of *Harper* v. *Nashville,* supra, were cited approvingly, and in principle applied, in *Hallman* v. *Atlanta Child's Home,* 161 *Ga.* 247 (130 S. E. 814), in which a judgment enjoining commissioners from granting permit for location of a cemetery was reversed.

The business involved in the instant case does not embrace features of injury as mentioned in the filling-station cases or the cemetery cases mentioned above, or such injury as might flow from operating a funeral establishment or morgue, as dealt with in some of the cases cited. It is the simple matter of display for sale of tombstones and monuments designed and intended to be placed over the bodies or graves of deceased persons. The business was lawful and unrestricted by statute or by ordinance so far as appears from the allegations, and was rightly conceded by the attorney not to be a nuisance per se. As indicated, there was nothing in the manner of carrying on the business as, within the principles hereinbefore stated, would make it a nuisance per accidens. It is alleged that it would become a nuisance per accidens, because of its location in an exclusively residential section and in close proximity to public schools, where the constant view of the. "graveyard-like" appearance of the display would prey upon the minds of the individuals and injure the health, and that it would injuriously affect the values of the properties in the vicinity. Sufficient has been said in the foregoing authorities to refute these allegations. In so far as might affect values of property in the vicinage, the business and its operation being lawful and reasonable, such operation would not afford other owners ground for injunctive relief. *Holman* v. *Athens Empire Laundry Co.,* and *Austin* v. *Augusta Terminal Co.,* supra. The possibility of injurious effect, from operating such a business, upon the mind of adult or child is theoretical, fanciful, and too remote to constitute ground for condemning the business as a nuisance to be enjoined by the courts. If it should be held that on account of its character the business in question could be condemned as a nuisance for the reasons suggested, there would be

no limit to extension of the rule to other classes of business, and it would lead to absurdity. It could not with reason be said that the conduct of the business would injuriously affect "an ordinary reasonable man." That it might affect one of "fastidious taste" would not bring it within the Code definition of a nuisance quoted above. The attorney for the plaintiffs cites *Morrison* v. *Slappey*, 153 *Ga.* 724 (113 S. E. 82); *Hurrison* v. *Sutton*, 168 *Ga.* 565 (148 S. E. 403); Saier *v.* Joy, 198 Mich. 295 (164 N. W. 507, L. R. A. 1918A, 825); *Pig'n Whistle* v. *Keith*, 167 *Ga.* 735 (146 S. E. 455); *Blackman Health Resort* v. *Atlanta*, 151 *Ga.* 507 (107 S. E. 525, 17 A. L. R. 516); 46 C. J. 658, § 23; *Coker* v. *Birge*, 9 *Ga.* 425 (54 Am. D. 347); *Hill* v. *McBurney Oil &c. Co.*, 112 *Ga.* 788 (38 S. E. 42, 52 L. R. A. 398); *Hodges* v. *Pine Products Co.*, 135 *Ga.* 134 (68 S. E. 1107, 33 L. R. A. (N. S.) 74, 21 Ann. Cas. 1052), 46 C. J. 693, § 101; 11 Am. Jur. 1038, § 280; Dowsey *v.* Kensington, 257 N. Y. 221 (177 N. E. 427, 86 A. L. R. 642); State ex rel. Sivello *v.* New Orleans, 154 La. 271 (97 So. 440, 33 A. L. R. 260); General Outdoor Adv. Co. *v.* Indianapolis, 202 Ind. 85 (172 N. E. 309, 72 A. L. R. 453).

In *Morrison* v. *Slappey*, supra, the judgment of the trial court, which was affirmed by this court, in part inhibited the carrying of caskets and other equipment to the undertaker's place of business, where the "purpose . . . apparent by external appearance" is to bury the dead. This part of the order might seem to give effect to aesthetic considerations as ground for enjoining operation of an undertaking establishment in residential sections of a city. But that ruling should not be extended beyond the facts of that case and made to apply to the case, as in this instance, of mere display for sale in exclusive residential sections of tombstones and monuments designed and intended to be placed over the bodies or graves of deceased persons. This applies also to the ruling in *Harris* v. *Sutton*, 168 *Ga.* 565 (148 S. E. 403), citing *Morrison* v. *Slappey*, supra, and affirming the grant of an interlocutory injunction against establishment of an undertaking business in a residential section near a public school. It applies in like manner to *McGowan* v. *May*, 186 *Ga.* 79 (196 S. E. 705). The case of Saier *v.* Joy, 198 Mich. 295 (supra), involved maintenance of an undertaking establishment and morgue in a residential section of a city, and is also distinguishable from the instant case. The headnote of that

decision is as follows: "The maintenance of an undertaking establishment and morgue in a residential section of a city, although not a nuisance per se, may be enjoined by nearby apartment owners where it will cause depression to the normal person, lower his vitality, render him more susceptible to disease, and deprive his home of the comfort, repose, and enjoyment to which he is entitled, and he will sustain substantial financial loss, because of the depreciation in value of his property, and there is a strong probability that he will be disturbed by noxious odors due to the use of formaldehyde in the summer months when the windows are open." In the opinion it is said: "We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse; . . the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled. We can not overlook the right to engage in a lawful trade, nor the fact that the conduct of the undertaking business is not only lawful, but highly necessary, nor that it is not a nuisance per se. Nor can we overlook the right of the citizen to be protected in his home, and his right to the enjoyment there, of that repose and comfort that are inherently his. The question here is not the restraining of defendants' business, but the restraint of its intrusion into a long-

established and strictly residential district. The cases directly in point are meager. The industry of counsel, and such investigation as we have been able to make, disclose but two: Westcott *v.* Middleton, 43 N. J. Eq. 478 (11 Atl. 490); Densmore *v.* Evergreen Camp, No. 147, 61 Wash. 230 (112 Pac. 255, 31 L. R. A. (N. S.) 608, Am. & Eng. Ann. Cas. 1912B, 1206). In the New Jersey case the injunction was refused, and the bill dismissed." It will be perceived from this decision that it took into consideration several factual elements leading to the conclusion announced, that can not exist in the mere display and sale of tombstones and monuments. The ruling, considered in connection with the grounds on which it is based, does not accord with the provisions of the Code and the decisions by this court hereinabove quoted, and consequently is not sufficiently persuasive to require a ruling reversing the judgment in the instant case.

In State ex rel. Civello *v.* New Orleans, 154 La. 271 (97 So. 440, 33 A. L. R. 260), the question was whether, in the absence of constitutional prohibition, the legislature may under its police power authorize municipal corporations to zone their territory so as to prevent the establishment of business enterprises in residential districts. It was held that the legislature could authorize municipalities, by exercise of the police power of the State, to adopt an ordinance establishing zoning districts. The several classes of business affected by the municipal ordinance were (a) establishment and conduct of a grocery business in residential districts; (b) establishment and conduct of filling-stations for the accommodation of automobiles; (c) conducting a vegetable and fruit stand and an oyster counter in a residential district; (d) establishment of an ice factory; all such businesses being in districts forbidden by the zoning ordinance. In discussing the question whether the zoning ordinance was violative of the due-process and equal-protection clauses of the Federal constitution, it was said: "The Supreme Court of the United States maintains, and the State courts that have dealt with this subject also maintain, that aesthetic considerations alone do not justify an exercise of the police power to limit a person's right to use his property as he sees fit. It is said, though, that if the primary consideration for the enactment of an ordinance limiting the individual's right to use his own property is a substantial consideration of public health, safety, comfort, or

general welfare, considerations of taste and beauty may also enter in, and be not out of place. Welch v. Swasey, 214 U. S. 91, 108, 29 Sup. Ct. 567, 53 L. ed. 923; Ayer v. Com'n on Height of Buildings in Boston (1922), 242 Mass. 30, 136 N. E. 338; Opinion of Justices, 234 Mass. 597, 127 N. E. 525; Cochran v. Preston, 108 Md. 220, 70 Atl. 113, 15 Ann. Cas. 1048. If by the term 'aesthetic considerations' is meant a regard merely for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reason for saying that such a consideration is not a matter of general welfare. The beauty of a fashionable residence neighborhood in a city is for the comfort and happiness of the residents, and it sustains in a general way the value of property in the neighborhood. It is therefore as much a matter of general welfare as is any other condition that fosters comfort or happiness and consequent values generally of the property in the neighborhood. Why should not the police power avail, as well to suppress or prevent a nuisance committed by offending the sense of sight, as to suppress or prevent a nuisance committed by offending the sense of hearing, or the olfactory nerves? An eyesore in a neighborhood of residences might be as much a public nuisance, and as ruinous to property values in the neighborhood generally, as a disagreeable noise, or odor, or a menace to safety or health. The difference is not in principle, but only in degree. In fact, we believe that the billboard case, Cusack v. Chicago, 242 U. S. 526, 37 Sup. Ct. 190, 61 L. ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, or St. Louis Poster Advertising Co. v. St. Louis, 149 U. S. 249, 39 Sup. Ct. 274, 63 L. ed. 599, or the skyline case, Welch v. Swasey, 214 U. S. 91, 29 Sup. Ct. 567, 53 L. ed. 923, or the case of Hubbard v. Taunton, 140 Mass. 467, 5 N. E. 157, might have rested as logically upon the so called aesthetic considerations as upon the supposed other considerations of general welfare." The foregoing decision did not involve the exact question of enjoining as a nuisance a display for sale of tombstones and monuments, such as is involved in the instant case. If it had involved such question and the court had ruled that a nuisance was created that should be enjoined by the courts, the decision would not have been harmonious with the provisions of the Code, and the decisions of this court hereinabove cited.

In the instant case there was not involved any zoning ordinance

to call for exercise of the police power or for a decision upon that subject. Nor was there any statute restricting the use to which the owner of property may put it on the basis of purely "aesthetic considerations" as defined in the foregoing excerpt. The nearest approach to any such statutory regulation in this State is in the Code, § 72-101, defining a nuisance quoted above, and that section contains the provision that "The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." If in the instant case there had been a valid ordinance inhibiting conduct of the business at the location in question, conduct of the business in violation of the ordinance would be unlawful, and a different question would be presented from that now before this court. None of the authorities mentioned above as taken from the brief, not specially dealt with, casts additional light on this question than as shown by the authorities hereinbefore dealt with somewhat elaborately. The judge did not err in dismissing the action on demurrer, for the reasons specifically assigned and urged in the brief for the plaintiffs.

*Judgment affirmed. All the Justices concur, except*

JENKINS, Justice, dissenting. I think this case should be governed by the principle announced in *Morrison* v. *Slappey,* 153 *Ga.* 724 (113 S. E. 82), *Harris* v. *Sutton,* 168 *Ga.* 565 (148 S. E. 403), and *McGowan* v. *May,* 186 *Ga.* 79 (196 S. E. 705), which dealt with the establishment of an undertaking business in a neighborhood distinctly residential in character; and that a jury should have been allowed to determine the case in accordance with the rule there announced. The cemetery cases, though somewhat similar, present situations distinctly different in character. Cemeteries manifestly can not be established in distinctly business centers; and, as was said in those cases, these necessary institutions of large and extended area could not possibly be established without being in proximity to at least some residential property. Here the yard or shop displaying the monuments and tombstones of the dead was not beset by any such necessity. It would not seem to amount to mere fastidiousness for one who has erected his home in a distinctly residential section to object to a business of this particular character, seeking him out and camping adjacent to his home, with all the embarrassment and pecuniary loss which must inevitably follow.